**In re: PETITION TO COMPEL COOPERATION WITH CHILD ABUSE INVESTIGATION.**

**Appeal of: R.G. & S.G., Natural Parents, Appellants.**

Superior Court of Pennsylvania.

Argued Oct. 12, 2004.
Filed May 20, 2005.

---

James R. Mason, III, Purcellville, VA and Richard Winkler, Titusville, for appellants.

Marion O'Malley, Montose, for appellee.

Before: FORD ELLIOTT, JOYCE, and BECK, JJ.

OPINION BY FORD ELLIOTT, J.:

¶ 1 R.G. & S.G., natural parents of I.G., appeal the court's March 4, 2004 order compelling their cooperation with Susquehanna County Services for Children and Youth ("C & Y") for the scheduling and completion of a "home visit" of their residence. Appellants argue, *inter alia*, that the order was unsupported by probable cause and therefore violated their state and federal constitutional rights against unreasonable searches and seizures. We agree and vacate the lower court's order.

¶ 2 On March 4, 2004, C & Y presented a "petition to compel cooperation with child abuse investigation" before the Honorable Kenneth W. Seamans, President Judge. In its petition, C & Y averred that on or about February 17, 2004, it received a Child Line referral for possible child abuse of I.G., born February 5, 2004; and that appellants had refused to allow the assigned caseworker to make a home visit as mandated by 55 Pa.Code § 3490.55(i). Without a hearing, Judge Seamans signed an order directing appellants to comply with a home visit within ten days. On March 9, 2004, appellants filed a motion for temporary stay, which was denied on that same date, the lower court "having determined under Pennsylvania Code Title 55 § 3490.55(i) a home visit is mandatory . . . ." (Docket No. 2–7.) On March 10, 2004, appellants filed a notice of appeal.[1] Both this court and our supreme court denied appellants' motions for an emergency stay pending appeal.

¶ 3 Appellants have raised the following issues for this court's review:

1. Is the home-visit order an appealable order?

2. Because the issue raises important public policy issues about whether social workers must comply with the Fourth Amendment and Article I, Section 8, and is capable of repetition yet evading appellate review, may this Court address the merits of the appeal even though the home visit has occurred?

3. Did the court below lack jurisdiction to entertain the petition for the home-visit order since its purported jurisdiction was based solely on an administrative regulation?

---

1. Appellants were not ordered to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P.1925(b); and no trial court opinion was filed. However, as this appeal purely involves questions of law, meaningful appellate review is not hindered and we will not remand for an opinion.

4. Are Pennsylvania social-worker investigations, insofar as they include non-consensual entry into a private residence, subject to Fourth Amendment and Article I, Section 8?

5. Must home-visit orders like the one obtained by the Agency be supported by a verified petition stating facts amounting to probable cause and must they state with particularity the place to be searched?

6. If 55 Pa. ADC § 3490.73 allows a court to issue a home-visit order without probable cause, is it unconstitutional?

7. Does due process require notice and opportunity to be heard in non-emergency cases where social workers seek entry into a private residence to complete an investigation?

Appellants' brief at 2.

■ ¶ 4 Initially, we must address the appealability of the March 4, 2004 order. Pennsylvania Rule of Appellate Procedure 341 provides, in relevant part:

### Rule 341. Final Orders; Generally

(a) General rule. Except as prescribed in subdivisions (d), and (e) of this rule, an appeal may be taken as of right from any final order of an administrative agency or lower court.

(b) Definition of final order. A final order is any order that:

(1) disposes of all claims and of all parties; or

(2) any order that is expressly defined as a final order by statute; or

(3) any order entered as a final order pursuant to subdivision (c) of this rule.

Pa.R.A.P. 341(a), (b).

¶ 5 In the instant case, there was never a juvenile dependency petition filed by C & Y. The investigation was completed without instituting further proceedings. In granting C & Y's petition to compel, the trial court disposed of the only issue then before it: whether appellants were required to submit to a home visit as part of C & Y's investigation into the child abuse allegations. As there was nothing else pending, the court's order disposed of all claims and of all parties; and therefore, constituted a "final order" for appeal purposes.[2]

■ ¶ 6 Next, we must consider whether the matter is moot. After our supreme court denied appellants' motion for an emergency stay, the home visit that is the subject of the instant appeal in fact occurred. (Appellants' brief at 11.) Since then, appellants have received notice from C & Y that the investigation has been closed and that C & Y determined the allegations of possible medical neglect to be unfounded. (*Id.*) Nevertheless, appellants urge this court to consider their claims on the merits because "the issues raised by this appeal are of the highest public importance and are capable of repetition yet evading review." (*Id.*)

■ ¶ 7 "It is impermissible for courts to render purely advisory opinions. In other words, judgments or decrees to which no effect can be given will not, in most cases, be entered by this Court." *Rivera v. Pennsylvania Dept. of Corrections*, 837 A.2d 525, 527–528 (Pa.Super.2003), *appeal denied*, 579 Pa. 704, 857 A.2d 680 (2004) (citations and quotation marks omitted).

Generally, an actual claim or controversy must be present at all stages of the judicial process for the case to be

---

2. As we have determined that this was a final order appealable as of right, we need not address appellants' alternative argument that the order was in the nature of a mandatory injunction.

actionable or reviewable. *Plowman v. Plowman*, 409 Pa.Super. 143, 597 A.2d 701, 705 (1991). If events occur to eliminate the claim or controversy at any stage in the process, the case becomes moot. *Id.* Even if a claim becomes moot, we may still reach its merits if the issues raised in the case are capable of repetition, yet likely to continually evade appellate review. *Id. See also In Re Fiori*, 543 Pa. 592, 600 n. 4, 673 A.2d 905, 909 n. 4 (1996) (holding death of patient did not preclude appellate review where issue was of important public interest, capable of repetition, yet apt to elude appellate review); *Commonwealth v. Bernhardt*, 359 Pa.Super. 413, 519 A.2d 417, 420 (1986) (holding exception to mootness doctrine exists where '(1) the question involved is capable of repetition but likely to evade review, or (2) the question involved is one of public importance'). Therefore, if the issues raised by an appeal are 'substantial questions' or 'questions of public importance,' and are capable of repetition, yet likely to evade appellate review, then we will reach the merits of the appeal despite its technical mootness. *Id.*

*In re Duran*, 769 A.2d 497, 502 (Pa.Super.2001).

¶ 8 In *Duran, supra*, Maria Duran ("Maria") was a Jehovah's Witness who required a liver transplant. In anticipation of the transplant, Maria executed a durable power of attorney for medical care, directing that she was not to receive a blood transfusion under any circumstances. The appellant in that case, Larry M. Johnson, was appointed as her healthcare agent. Maria underwent two transplant surgeries; her body rejected both organs. She slipped into a coma, and doctors estimated that without a blood transfusion she would die within 24 hours. *Id.* at 501.

¶ 9 Maria's husband, Lionel Duran ("Lionel"), petitioned the orphans' court to be appointed her emergency limited guardian for the purpose of consenting to a blood transfusion; the appellant was not given notice of the hearing. The orphans' court granted Lionel's petition, and the appellant filed exceptions. Meanwhile, Lionel consented to the necessary blood transfusions; however, Maria died a short time later.

¶ 10 Lionel subsequently withdrew his petition for guardianship. The appellant requested the court to rule on his exceptions despite their technical mootness; the orphans' court, sitting *en banc*, affirmed the order. On appeal, we determined that although the appellant's issues were technically moot because of Maria's death, we would address them on the merits:

> [T]he issues raised by this appeal are capable of repetition given the approximately two million Jehovah's Witnesses living in the United States. The issues in this appeal, rights to privacy and bodily integrity, are matters of public importance. Finally, the circumstantial constraints involved in appeals of this nature make timely review virtually impracticable in almost every instance.

*Id.* at 502–503, citing *In re Estate of Dorone*, 349 Pa.Super. 59, 502 A.2d 1271, 1275 (1985), *appeal granted*, 511 Pa. 609, 515 A.2d 893 (1986), *affirmed*, 517 Pa. 3, 534 A.2d 452 (1987). *See also Rivera, supra* (where the appellants alleged their prison conditions in the Long Term Segregation Unit of SCI–Pittsburgh constituted cruel and unusual punishment, a prison in which they were no longer inmates at time of appeal, the issue was capable of repetition and we chose to review the matter).

¶ 11 In the instant case, the issues before us are clearly capable of repetition, yet evading appellate review. As more fully discussed *infra*, the agency's guide-

lines require it to conduct a home visit during the course of its investigation. If the subjects of the investigation refuse to cooperate, the agency must petition the court. Under the Child Protective Services Law ("CPSL"), 23 Pa.C.S.A. §§ 6301 *et seq.*, the county agency's investigation must be completed within 60 days. 23 Pa.C.S.A. § 6368(c). In this case, as in many others, an investigation into child abuse allegations does not culminate in the filing of a dependency petition. Therefore, parents such as appellants who are ordered by the court to open their home to an agency investigator within a specified time period will be denied appellate review.

¶ 12 Appellants argue that the lower court's order violated their rights against unreasonable searches and seizures under the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. Appellants also contend that the court's order, issued without notice or an opportunity to be heard, violated their due process rights. We conclude that these are questions of great public importance, implicating fundamental constitutional rights enjoyed by every citizen of this Commonwealth; accordingly, we proceed to the merits of the appeal.

■ ¶ 13 Appellants' first substantive argument is that the court lacked jurisdiction to enter its order because C & Y had not filed a dependency petition. Appellants' position is that administrative regulations alone are insufficient to confer jurisdiction; and that in the absence of a petition filed pursuant to the Juvenile Act, 42 Pa.C.S.A. §§ 6301 *et seq.*, C & Y could not legally invoke the court's jurisdiction. We disagree.

¶ 14 The legislature's purpose in enacting the CPSL is stated in Section 6302(b):

It is the purpose of this chapter to encourage more complete reporting of suspected child abuse; to the extent permitted by this chapter, to involve law enforcement agencies in responding to child abuse; and to establish in each county protective services for the purpose of investigating the reports swiftly and competently, providing protection for children from further abuse and providing rehabilitative services for children and parents involved so as to ensure the child's well-being and to preserve, stabilize and protect the integrity of family life wherever appropriate or to provide another alternative permanent family when the unity of the family cannot be maintained. It is also the purpose of this chapter to ensure that each county children and youth agency establish a program of protective services with procedures to assess risk of harm to a child and with the capabilities to respond adequately to meet the needs of the family and child who may be at risk and to prioritize the response and services to children most at risk.

23 Pa.C.S.A. § 6302(b).

¶ 15 The CPSL charges the county agencies with investigating each report of suspected child abuse:

Upon receipt of each report of suspected child abuse, the county agency shall immediately commence an appropriate investigation and see the child immediately if emergency protective custody is required or has been or shall be taken or if it cannot be determined from the report whether emergency protective custody is needed. Otherwise, the county agency shall commence an appropriate investigation and see the child within 24 hours of receipt of the report. The investigation shall include a determination of the risk of harm to the child or children if they continue to remain in

the existing home environment, as well as a determination of the nature, extent and cause of any condition enumerated in the report and any action necessary to provide for the safety of the child or children.

23 Pa.C.S.A. § 6368(a). Our legislature has expressly authorized the Department of Public Welfare ("DPW") to adopt whatever regulations are necessary to implement the CPSL. 23 Pa.C.S.A. § 6348.[3]

¶ 16 Title 55 of the Pennsylvania Administrative Code, Section 3490.55, states in relevant part: "When conducting its investigation, the county agency shall visit the child's home, at least once during the investigation period. The home visits shall occur as often as necessary to complete the investigation and to assure the safety of the child." 55 Pa.Code § 3490.55(i). Section 3490.73, "Petitioning the court," provides:

> The county agency shall petition the court if one of the following applies:
>
> . . . .
>
> (2) A subject of the report of suspected child abuse refuses to cooperate with the county agency in an investigation, and the county agency is unable to determine whether the child is at risk.

55 Pa.Code § 3490.73(2).

¶ 17 Clearly, the court had jurisdiction to entertain C & Y's petition in this matter under Section 3490.73. One of the stated purposes of the subchapter is to implement the CPSL, as mandated by the legislature. 55 Pa.Code § 3490.2(3). The only avenue of relief for a county agency investigating allegations of child abuse, short of filing a juvenile dependency petition, are the courts of common pleas. Although a

"home visit" during the course of the agency caseworker's investigation is not explicitly required by the CPSL, but rather by the DPW regulations, its necessity is implied in 23 Pa.C.S.A. § 6368, *supra* (agency must see child within 24 hours and determine risk of harm to child if he/she continues to reside in the home). We reject appellants' contention that where the subjects of an agency investigation refuse to cooperate, C & Y must commence dependency proceedings in order to avail itself of the powers of the court, before any determination has been made regarding whether or not the report of child abuse is founded.

¶ 18 In support of their argument that jurisdiction was improper, appellants cite *In the Matter of A.L.*, 779 A.2d 1172 (Pa.Super.2001), and *Pennsylvania Commercial Drivers Conference v. Pennsylvania Milk Control Commission*, 360 Pa. 477, 62 A.2d 9 (1948). (Appellants' brief at 15–16.) Both are inapposite. In *A.L.*, *supra*, the parties were before the court for the sole purpose of determining custody of their children. Despite the fact that the only issue appropriate for disposition was that of custody, the trial court made a *sua sponte* determination that the children were dependent. *A.L.*, *supra* at 1174. In concluding the trial court was without jurisdiction to evaluate and rule upon any issue of dependency, a panel of this court stated: "[I]n order for a court to have jurisdiction to find a child to be dependent, there must be a petition filed under the Juvenile Act which alleges the dependency of the child." *Id.* at 1175 (citations and quotation marks omitted).

¶ 19 In *Pennsylvania Commercial Drivers Conference*, the appellants appealed an order of the Milk Control Commis-

---

3. "The department shall adopt regulations necessary to implement this chapter." 23 Pa.C.S.A. § 6348.

sion. The order continued for an indefinite period restricted milk deliveries in the Philadelphia area. The appellants included local union No. 463, representing dairy employees in Philadelphia, as well as 51 local unions representing, for purposes of collective bargaining, persons employed in the delivery of milk throughout the Commonwealth. *Pennsylvania Commercial Drivers Conference, supra* at 479–480, 62 A.2d at 11. Our supreme court concluded that the relevant statute provided for a single as distinguished from a joint appeal from the commission's order to the court of common pleas. *Id.* at 481, 62 A.2d at 12. In addition, our supreme court held that the unions operating in other milk delivery areas had no direct interest in the order applying to the Philadelphia area and had no right to appeal from that order as parties aggrieved by it. *Id.* at 482–483, 62 A.2d at 12. The appellants contended that because the commission joined with them in a stipulation stating that they were parties aggrieved, the trial court had jurisdiction. The supreme court rejected this position, stating: "[I]t is elementary that jurisdiction over the subject matter—the right to enter upon the inquiry—cannot, by agreement of the parties, be conferred on a court on which a statute has not conferred such jurisdiction." *Id.* at 485, 62 A.2d at 13 (citations omitted).

¶ 20 Clearly, these two cases are distinguishable on their facts. Instantly, the lower court did not rule upon a matter not properly before it, as in *A.L., supra*. Nor do the parties herein claim jurisdiction by stipulation. As discussed at length *supra*, we determine that the CPSL and the regulations adopted by the DPW to implement it at the county agency level, when read together, clearly established jurisdiction over this matter in the court of common pleas, independent of whether a dependency petition had been filed pursuant to the Juvenile Act.

■ ¶ 21 Having determined the court properly exercised jurisdiction over C & Y's petition to compel, we now turn to appellants' constitutional arguments. For ease of discussion, we will address appellants' Fourth Amendment claims together.

■ ¶ 22 "The Fourth Amendment to the Constitution of the United States protects people from unreasonable government intrusions into their legitimate expectations of privacy. Upon closing the door of one's home to the outside world, a person may legitimately expect the highest degree of privacy known to our society." *Commonwealth v. Flewellen*, 475 Pa. 442, 446, 380 A.2d 1217, 1219–1220 (1977) (citations and quotation marks omitted). The Fourth Amendment to the United States Constitution reads as follows:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const.amend.IV.

¶ 23 Article I, Section 8 of the Pennsylvania Constitution provides:

§ 8. **Security from searches and seizures**

■ The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa.Const Art. I, § 8. "The protection against unreasonable searches and seizures afforded by the Pennsylvania Constitution is broader than that under the federal Constitution." *Commonwealth v. Jackson,* 548 Pa. 484, 488, 698 A.2d 571, 573 (1997), citing *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991).[4]

¶ 24 The issue of whether the Fourth Amendment and/or Article I, Section 8 of our constitution apply to an investigation by a children and youth agency caseworker is one of first impression in this Commonwealth. We hold that the CPSL and specifically 55 Pa.Code § 3490.55(i), *supra,* which mandates a "home visit" at least once during the investigation period, are subject to the limits of existing Fourth Amendment jurisprudence.

¶ 25 In the seminal case of *Edmunds, supra,* our supreme court expounded upon the history of Article I, Section 8:

> The requirement of probable cause in this Commonwealth thus traces its origin to its original Constitution of 1776, drafted by the first convention of delegates chaired by Benjamin Franklin. The primary purpose of the warrant requirement was to abolish 'general warrants,' which had been used by the British to conduct sweeping searches of residences and businesses, based upon generalized suspicions. Therefore, at the time the Pennsylvania Constitution was drafted in 1776, the issue of searches and seizures unsupported by probable cause was of utmost concern to the constitutional draftsmen.

Moreover, as this Court has stated repeatedly in interpreting Article I, Section 8, that provision is meant to embody a strong notion of privacy, carefully safeguarded in this Commonwealth for the past two centuries. As we stated in [*Commonwealth v. Sell,* 504 Pa. 46, 470 A.2d 457 (1983)]: 'the survival of the language now employed in Article I, Section 8 through over 200 years of profound change in other areas demonstrates that the paramount concern for privacy first adopted as part of our organic law in 1776 continues to enjoy the mandate of the people of this Commonwealth.' *Id.* 504 Pa. at 65, 470 A.2d at 467.

*Edmunds, supra* at 394, 586 A.2d at 897 (additional citations omitted).

¶ 26 C & Y argues that the court's order did not violate appellants' Fourth Amendment rights because a home visit is *required* by the DPW's regulations; and that the Fourth Amendment does not apply where the safety of children is at issue ("A home visit by [C & Y] is *not only* required by law *but* also necessary to insure this (and any other) child's safety") (emphasis in original). (C & Y's brief at 3.) We disagree that Section 3490.55(i) can be enforced absent a showing of probable cause, good cause shown, or the existence of exigent circumstances; and C & Y's assertion that the Fourth Amendment simply does not apply in the context of child abuse investigations is fatally flawed and unsupportable.

---

4. Appellants argue both provisions in their brief; to the extent appellants implicate Article I, Section 8, they are required by *Edmunds, supra,* to brief and analyze at least the following four factors:
    1) text of the Pennsylvania constitutional provision;
    2) history of the provision, including Pennsylvania case-law;

    3) related case-law from other states;
    4) policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence.

*Id.* at 390, 586 A.2d at 895. Appellants have complied with *Edmunds'* requirements.

¶ 27 Although, as stated above, there is no Pennsylvania case law addressing this precise issue, there are federal cases which we find instructive. In *Good v. Dauphin County Social Services for Children and Youth*, 891 F.2d 1087 (3rd Cir.(Pa.) 1989), in a Section 1983 civil rights action, the court addressed whether the CPSL could immunize the defendants for any violation of the plaintiffs' Fourth Amendment rights. In that case, Dauphin County Social Services received anonymous information concerning possible child abuse of Jochebed Good, then age seven. It was reported that Jochebed Good had bruises on her body and that certain bruises were caused by a fight with her mother. *Id.* at 1089. After a Social Services caseworker tried unsuccessfully to contact Ms. Good by telephone, another caseworker was assigned to visit the home, accompanied by a police officer. *Id.* According to Ms. Good's complaint, they demanded entry and Ms. Good asked to see a warrant or a court order. The caseworker said that they needed no warrant because they had a report her daughter had been abused and she must let them enter. *Id.* at 1090. The caseworker and police officer entered the home, conducted a strip search of the child without consent, and found no injuries. *Id.*

¶ 28 The plaintiffs filed a civil rights action and the district court entered summary judgment against them. On appeal the defendants argued the grant of summary judgment in their favor was appropriate because they were entitled to immunity for their actions under the doctrine of qualified immunity. The defendants argued that the challenged searches were reasonable because of the need to ascertain whether Jochebed was a victim of child abuse and to protect her if she was. *Id.* at 1093. The defendants suggested that they were entitled to assume until told otherwise by the courts that child abuse cases would not be controlled by the well-established legal principles developed in the context of residential intrusions motivated by less pressing concerns. *Id.* at 1094. The Third Circuit Court of Appeals rejected this argument, stating:

> It evidences no lack of concern for the victims of child abuse or lack of respect for the problems associated with its prevention to observe that child abuse is not sui generis in this context. The Fourth Amendment caselaw has been developed in a myriad of situations involving very serious threats to individuals and society, and we find no suggestion there that the governing principles should vary depending on the court's assessment of the gravity of the societal risk involved.

*Id.* (footnote omitted). The court held that the Social Services caseworker and the police officer were not entitled to summary judgment on the basis of qualified immunity, as the trier of fact could conclude that reasonable persons in their positions could not have believed their conduct was lawful. *Id.* at 1095. In so holding, the *Good* court also noted that, "Current doctrine accommodates situations where the health of a child would have been endangered had social workers taken the time to apply for a warrant." *Id.* at 1094 n. 4 (citations omitted).

¶ 29 In *Walsh v. Erie County Dept. of Job and Family Services*, 240 F.Supp.2d 731 (N.D.Ohio 2003), the district court interpreted a similar Ohio provision in light of the Fourth Amendment. The Erie County, Ohio Department of Job and Family Services received an anonymous report of poor conditions at the plaintiffs' residence. The next day, three caseworkers went to the Walsh home to investigate. One of the caseworkers told Mrs. Walsh that it was part of her job to enter the home and ensure the children's safety.

The caseworker stated they would be in trouble with their supervisors if they were not allowed inside the home to complete the investigation. *Id.* at 741. The plaintiffs refused to allow Family Services into their home without a search warrant. The police were called, and eventually Mr. Walsh allowed the caseworkers into the house. The plaintiffs subsequently brought suit, asserting, *inter alia*, that they were deprived of their rights under the United States and Ohio Constitutions to be secure in their persons and home against unreasonable searches and seizures and their liberty interests in the integrity and autonomy of their family.

¶ 30 The defendants argued that the Fourth Amendment was not applicable to the activities of their social worker employees, relying on *Wyman v. James*, 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971). The district court disagreed and distinguished *Wyman*, stating:

> To accept the defendants' claims about the reach of *Wyman* would give the state unfettered and absolute authority to enter private homes and disrupt the tranquility of family life on nothing more than an anonymous rumor that something might be amiss.
>
> Despite the defendants' exaggerated view of their powers, the Fourth Amendment applies to them, as it does to all other officers and agents of the state whose requests to enter, however benign or well-intentioned, are met by a closed door. There is, the defendants' understanding and assertions to the contrary notwithstanding, no social worker exception to the strictures of the Fourth Amendment.

*Walsh, supra* at 746–747 (citations omitted). The *Walsh* court also rejected the defendants' assertion of exigent circumstances: "On the record before the court, the anonymous tip simply did not provide reason to believe that the children were at such risk of harm or injury that immediate action was necessary." *Id.* at 749.

¶ 31 As in the instant case, Erie County Family Services pointed to the Ohio Revised Code as authority for their warrantless entry into and search of the plaintiffs' home. Specifically, Section 2151.421 imposes a duty on county agencies to investigate a report of known or suspected child abuse within 24 hours. *Id.* at 751. The court flatly rejected the defendants' reading of the statute as allowing a warrantless search under the circumstances of that case:

> To the extent that § 2151.421(F)(1) and other provisions of the Ohio Administrative Code provided by the defendants might be viewed as leaving no role for the Fourth Amendment, defendants' argument cannot be sustained. State statutes and regulations cannot displace the protections of the United States Constitution. If that is defendants' premise, it is entirely erroneous, even when the state acts to protect the welfare of children.

*Id.* (citation omitted).

¶ 32 C & Y puts forth similar arguments as the defendants in *Walsh, supra*. C & Y relies on the Pennsylvania Administrative Code's language that a county agency "shall" conduct a home visit as part of its investigation; and argues that the state's interest in preventing and investigating child abuse preempts any private constitutional concerns. Although it does not constitute binding precedential authority on this court, we agree with the federal courts' analysis in *Good, supra*, and *Walsh*, and hold that the Fourth Amendment and Article I, Section 8 apply to the CPSL and

the regulations written to implement it.[5] Clearly, the purpose of the home visit is to inspect and investigate the home for any evidence of abuse.

■ ¶ 33 Having held that the Fourth Amendment and, by necessary implication, Article I, Section 8 apply in this case, we now turn to appellants' argument that the statute itself is unconstitutional. "A statute must be construed in such manner, if possible, as to bring it in harmony with constitutional requirement[s]." *Commonwealth v. McCoy*, 405 Pa. 23, 30, 172 A.2d 795, 798 (1961) (citations omitted). *See also Wright, supra* at 40, 742 A.2d at 664; 1 Pa.C.S.A. § 1922(3). Certainly it is possible to read the DPW's regulations in a manner consistent with the Fourth Amendment. C & Y is required to visit the child's home at least once during its investigation of child abuse allegations; if

a home visit is refused and C & Y is unable to determine whether conditions in the home present a risk to the child, it must petition the court. Nowhere in the CPSL or Title 55 of the Code does it state that the court must grant C & Y's petition regardless of the factual circumstances. As we interpret the statute and agency regulations, C & Y must file a verified petition alleging facts amounting to probable cause to believe that an act of child abuse or neglect has occurred and evidence relating to such abuse will be found in the home. Facially, then, the statute is constitutional.[6]

■ ¶ 34 Next, we turn to the petition in the instant case. Appellants argue that it did not allege facts sufficient for a finding of probable cause to support the trial court's order. We agree. C & Y's petition averred that:

---

5. Although this is an issue of first impression, we find further support for this conclusion in our supreme court's decision in *Commonwealth v. Wright*, 560 Pa. 34, 742 A.2d 661 (1999). In that case, the court examined 18 Pa.C.S.A. § 2711(b), requiring the police to seize weapons in certain cases involving domestic violence. The court rejected the argument that Section 2711(b) permits warrantless searches in domestic cases involving a weapon:

> [T]o construe Section 2711(b) as authorizing warrantless searches whenever a weapon is implicated in a domestic violence case would, as noted by Judge Olszewski, create a new and categorical exception to the Fourth Amendment's warrant requirement. Because we are obliged to construe the enactments of the General Assembly in harmony with constitutional requirements, the more tenable reading of Section 2711 is that the provision requires the police to seize a weapon when the intrusion is otherwise permissible.

*Id.* at 40, 742 A.2d at 664 (citations omitted). The court held that Section 2711 was subject to the limits of existing Fourth Amendment jurisprudence. *Id.* Despite the obvious state interest in preventing deaths from domestic violence, our supreme court refused to create

an exception for these types of cases from the warrant requirement. Although the *Wright* court was considering a criminal statute, courts have recognized the quasi-criminal nature of child abuse investigations by county agencies; and depending on the outcome of the investigation, it could lead to the filing of criminal charges.

6. In *H.R. v. State Dept. of Human Resources*, 612 So.2d 477 (Ala.Civ.App.1992), *certiorari denied* (Ala.Sup.Ct.1993), the intermediate appellate court in Alabama faced a similar problem. The Alabama statute provides that when consent to investigate the home or interview the child cannot be obtained, "a court of competent jurisdiction, *upon cause shown*, shall order the parents or persons in charge of any place where the child may be to allow the interview, examinations and investigations" by DHR. *Id.* at 478 (emphasis in original). The court held that in keeping with principles of constitutional construction, "The words 'cause shown' ... are construed to mean *reasonable or probable cause shown*, i.e., reasonable or probable cause shown to believe that there is or has been an abuse of a child or that a child is then delinquent or dependent." *Id.* at 479 (emphasis in original).

1. On or about February 17, 2004 the Agency received a Child Line referral of possible child abuse for [I.G.], date of birth February 5, 2004.

2. The parents of the subject child are [R.G.] and [S.G.] of [ ], Susquehanna County, Pennsylvania [ ].

3. The caseworker assigned to this referral has followed up with an investigation including contact with the parents and several medical facilities which provided treatment to said minor child.

4. The referral made was for alleged medical neglect.

5. The child has returned to the home of her parents as of February 23, 2004.

6. In order to complete the investigation, the assigned caseworker must make a home visit to the child's residence.

7. The caseworker has requested the opportunity to visit the home of [appellants] and they have refused.

8. The investigation of a report of suspected child abuse requires that the caseworker complete a home visit at least once during the investigation period. See: Pennsylvania Code Title 55 § 3490.55(i).

9. This Petition to Compel Cooperation is necessar[y] as a result of the parents['] failure and/or refusal to cooperate with the Agency in connection with this matter..

Petition to compel cooperation with child abuse investigation, 3/4/04 at 1.

¶ 35 Essentially, C & Y stated its petition should be granted because a home visit is required under the Code. Although C & Y now cites additional facts in its brief to this court,[7] the petition did not allege facts sufficient for a search warrant to issue. Even in *Walsh*, the alleged abuse had a specific link to the home conditions. Instantly, the only relevant facts alleged were that C & Y had received a Child Line referral for possible medical neglect. Clearly, this was insufficient to support the court's order compelling appellants to submit to a search of their home. Nor did C & Y allege exigent circumstances; the court's order giving appellants ten days to comply indicates that this was not an emergency situation where the child's life was in imminent danger. The trial court's order lacked any factual foundation for a finding of probable child abuse under the CPSL and will be vacated.

¶ 36 As in *Walsh, supra,* we emphasize the importance of protecting this Commonwealth's children from abuse and neglect:

There can be no doubt that the state can and should protect the welfare of children who are at risk from acts of abuse and neglect. There likewise can be no doubt that occasions arise calling for immediate response, even without prior judicial approval. But those instances are the exception. Otherwise child welfare workers would have a free pass into any home in which they have an anonymous report of poor housekeeping, overcrowding, and insufficient medical care and, thus, a perception that children may be a[t] some risk.

*Id.* at 751–752.

¶ 37 We are sympathetic to C & Y's mission and its mandate under the DPW regulations: "These regulations set forth a specific time frame within which the agency must conduct and complete its investi-

---

7. *E.g.,* C & Y states in its brief that I.G. was born at home and within ten days treated at a local hospital due to illness; appellants refused recommended invasive treatments, and I.G. was returned home against medical advice. (Appellee's brief at 2–3.) I.G. failed to improve and was eventually hospitalized. (*Id.*) These facts were not set forth in C & Y's petition.

gation and it sets forth specific parameters within which that investigation must be completed." (C & Y's brief at 10–11.) These regulations, however, are subject to Fourth Amendment constraints. By our decision today, we do not imply that C & Y should have stood idly by in the face of serious allegations of medical neglect:

> This is not to say that the defendants could have done nothing in response to the phone call (reporting child neglect). They could, as they did, contact the plaintiffs to request their help in resolving any questions they may have had as a result of the phone call. But once the plaintiffs declined to be responsive, the defendants were obligated by the Constitution to depart, and to leave the plaintiffs alone and in peace until such time as more information was learned from other, and more trustworthy sources. If, at that point, the plaintiffs refused to cooperate, defendants had several options, including filing of an abuse or neglect complaint . . . .

*Id.* at 752.

¶ 38 In the instant case, C & Y did all that it could do; it requested a home visit and when appellants refused, it petitioned the trial court. This fulfilled C & Y's statutory obligations. As discussed *supra*, C & Y's petition did not allege facts sufficient to establish probable cause and should properly have been denied. At that point, C & Y would have had several options, including further investigation to collect additional facts to support the issuance of a search warrant for appellants' home, and/or filing a formal petition for dependency. However, C & Y's responsibilities under the DPW regulations and the CPSL to investigate each and every allegation of child abuse/neglect, including visiting the child's home at least once during its investigation, do not trump an individual's constitutional rights under the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution.

¶ 39 Finally, we address appellants' argument that the court's order violated their rights to due process, in that it was issued without notice and a hearing. In support of this argument, appellants cite *van Emrik v. Chemung County Dept. of Social Services*, 911 F.2d 863 (2nd Cir. 1990). (Appellants' brief at 26.) *van Emrik* involved a medical examination; specifically, the taking of x-rays without prior notice to the child's parents and is clearly inapplicable to the instant case. We determine that as in a criminal matter where authorities solicit a search warrant from a magistrate, the trial court was not required under the due process clause of the Fourteenth Amendment to the United States Constitution to give appellants notice and an opportunity to be heard prior to considering the merits of C & Y's petition. Appellants are correct that as reflected in the court's order giving them ten days in which to comply, exigent circumstances were not alleged and there was ample time for an evidentiary hearing to occur; however, as a general matter, we hold that the court's issuance of its *ex parte* order granting C & Y's petition to compel did not violate appellants' due process rights. Particularly in the arena of child abuse/neglect and assuming probable cause for a search did exist, it would be unreasonable to direct the courts to give notice and schedule a hearing in every instance.

¶ 40 Order vacated. Jurisdiction relinquished.

¶ 41 BECK, J. files a Concurring Opinion which is joined by FORD ELLIOTT, J. and JOYCE, J., who also joins the majority.

Concurring OPINION BY BECK, J.:

¶ 1 I join the soundly reasoned majority opinion because it finds that the Fourth Amendment right to be free from unreasonable searches and seizures applies to actions of a social services agency seeking to investigate an anonymous complaint of child abuse. I write separately, however, to add two observations in this case.

¶ 2 First, I caution future parties and courts faced with this issue to consider that the purposes and goals underlying the activities of child protective agencies differ significantly from those of law enforcement generally. As a result, it would be unwise to apply the standard notion of probable cause in criminal law to cases such as these. While the Fourth Amendment certainly is applicable to these matters, we must not forget the very purpose for the Child Protective Services Law. Child Line and other services like it exist to encourage people to report incidents of potential danger to children. Likewise, we impose upon certain professionals an affirmative duty to report conduct they believe may be harmful to a child. For these reasons, simply requiring an agency to show "probable cause" as it is defined in the criminal law is not enough. Instead, the nature and context of each scenario must be considered.

¶ 3 What an agency knows and how it acquired its knowledge should not be subject to the same restrictions facing police seeking to secure a search warrant. For instance, an agency's awareness of previous conduct on the part of parents would be relevant, indeed vital, information to include in a request for a court-ordered home visit. What constitutes probable cause in the child protective arena is far different from what constitutes probable cause in the criminal law. Social services agencies should be held accountable for presenting sufficient reasons to warrant a home visit, but those same agencies should not be hampered from performing their duties because they have not satisfied search and seizure jurisprudence developed in the context of purely criminal law. I urge the courts deciding these issues to accord careful consideration to the unique circumstances they present.

¶ 4 Second, I would encourage agencies such as Susquehanna County Services for Children & Youth (C & Y) to include in their petitions *all* information at their disposal. Here, the majority aptly notes that C & Y's petition included little detail of the circumstances surrounding this case. This was so despite the fact that the agency interviewed several persons who treated the child and also had repeated contact with the parents. Although the child ultimately received the medical care recommended to her parents, C & Y apparently believed that further investigation, by way of a home visit, was necessary. The agency must articulate to the court the basis for its belief; it cannot simply assert the belief without explanation.

¶ 5 I recognize the burdensome case loads agencies such as the one here face. I also recognize that these same agencies often are criticized for not doing enough to help a child in need. Failure to make a home visit to insure a child's safety is a frequent criticism in cases that turn tragic. Therefore, the frustration agency officials experience in carrying out their tasks must be immense. Nonetheless, it is critically important that we insure agencies act within the bounds of the Constitution. When an agency sets out for the court all of the information it has in support of a motion to compel, the constitutional concerns can be addressed and the agency's duties are met.