**[J-39A-2021 and J-39B-2021] [MO: Donohue, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| IN THE INTEREST OF: Y.W.-B., A MINOR | : | No. 1 EAP 2021 |
| | : | |
| | : | Appeal from the Order of Superior |
| APPEAL OF: J.B., MOTHER | : | Court entered on October 8, 2020 at |
| | : | No. 1642 EDA 2019 affirming and |
| | : | reversing the Order entered on June |
| | : | 11, 2019 in the Court of Common |
| | : | Pleas, Philadelphia County, Family |
| | : | Division at No. CP-51-DP-0002108- |
| | : | 2013. |
| | : | |
| | : | ARGUED:  May 19, 2021 |
| | | |
| IN THE INTEREST OF: N.W.-B., A MINOR | : | No. 2 EAP 2021 |
| | : | |
| | : | Appeal from the Order of Superior |
| APPEAL OF: J.B., MOTHER | : | Court entered on October 8, 2020 at |
| | : | No. 1643 EDA 2019 affirming and |
| | : | reversing the Order entered on June |
| | : | 11, 2019 in the Court of Common |
| | : | Pleas, Philadelphia County, Family |
| | : | Division at No. CP-51-DP-0002387- |
| | : | 2016. |
| | : | |
| | : | ARGUED:  May 19, 2021 |

## DISSENTING OPINION

**JUSTICE MUNDY**                                **DECIDED:  December 23, 2021**

The issue in this case is whether the trial court's decision to grant the Philadelphia Department of Human Services' (DHS) Petitions to Compel Cooperation (Petitions to Compel) was supported by probable cause.  As I conclude DHS established sufficient probable cause to support the trial court's grant of the Petitions to Compel, I respectfully dissent.

An order directing cooperation with an investigative home visit in the child protective arena must satisfy the strictures of the Fourth Amendment, including the requirement that the order must be supported by probable cause. However, as Judge Beck observed in her concurrence in *In re Petition to Compel Cooperation with Child Abuse Investigation*, 875 A.2d 365 (Pa. Super. 2005), "it would be unwise to apply the standard notion of probable cause in criminal law to cases such as these." *In re Petition to Compel*, 875 A.2d at 380 (Beck, J. concurring). This is because "the purposes and goals underlying the activities of child protective agencies differ significantly from those of law enforcement generally." *Id.* For example, in the criminal arena, probable cause to search means "a fair probability that contraband or evidence of a crime will be found in a particular place." *Commonwealth v. Jones*, 988 A.2d 649, 655 (Pa. 2010) (citation omitted). The purpose of an investigative home visit in the child protective arena, however, is not to discover contraband or evidence of a crime, but, rather, to investigate reports of incidents or circumstances of potential danger to children. The ultimate goal of child protection agencies is the protection of children and not the prosecution of criminal activity. Therefore, the probable cause needed to grant a request to order cooperation with an investigative home visit should be that there is a fair probability that a child has suffered from abuse or neglect and that evidence relating to those allegations may be found in the residence. This standard protects a parent's Fourth Amendment rights while also permitting a child protective agency to protect the health and safety of the children involved.

Further, a probable cause determination is based on the totality of the circumstances and the issuing authority should make a practical, common-sense decision whether probable cause exists, given all the circumstances. Commonwealth *v. Torres*, 764 A.2d 532, 537 (Pa. 2001) (citation omitted). In addition, while there is a rule-based

requirement in the criminal arena that an issuing authority may only consider the contents of the sworn written affidavits presented by the affiant in making his or her probable cause determination, that requirement is not constitutionally mandated. Pa.R.Crim.P. 203(B); *Commonwealth v. Connor*, 305 A.2d 341, 342 (Pa. 1973). There is no corresponding rule-based requirement in the child protective services arena. Therefore, there is neither a constitutional requirement nor a rule-based requirement that a trial court considering a child protective agency's petition to compel an investigative home visit rely solely on the contents of the petition. As such and given the differences between the child protective and criminal contexts, I disagree with the Majority's holding that the trial court can only consider testimony at an evidentiary hearing on such a petition to establish probable cause "as long as the testimony is cabined by the allegations in the petition." Majority Opinion at 35. The trial court should be permitted to consider all the information before it in coming to its probable cause determination, including the contents of the petition, the evidence produced at any hearing on the petition, and the trial court's knowledge of the family's prior involvement with child protective services.

In this case, DHS filed the two Petitions to Compel (one for each child) at issue on May 31, 2019. In its petitions, DHS asserted, *inter alia*, that on May 22, 2019 it received a General Protective Services (GPS) report regarding the family. It summarized the contents of that report as follows:

> j. On May 22, 2019 DHS received a GPS report alleging that three weeks earlier, the family had been observed sleeping outside of a Philadelphia Housing Authority (PHA) office located at 2103 Ridge Avenue, that on May 21, 2019 [Mother] had been observed outside of the PHA office from 12:00 P.M. until 8:00 P.M. with one of the children in her care, that Project Home dispatched an outreach worker to assess the family, that [Mother] stated that she was not homeless and that her previous residence had burned down; and that it was unknown if [Mother] was feeding the children [sic] she stood

outside of the PHA office for extended periods of time. The report is pending determination.

Petitions to Compel, 5/31/2019 ¶ j. According to the petitions, that same day DHS located the family's home address through a Department of Public Welfare search and went to the residence:

l. On May 22, 2019, DHS visited the family's home. When DHS arrived at the home, only [Father] was present, and he refused to allow DHS to enter the home. [Father] contacted [Mother] via telephone and allowed DHS to speak with her. [Mother] stated that she was engaging in a protest outside of the PHA office; that she did not have the children with her while she was protesting; and that she would not permit DHS to enter the home. [Mother] subsequently returned to the home with [Y.W.-D.] and [N.W.-B.] in her care; DHS observed [Y.W.-B.] and [N.W.-B] appeared to be upset before [Mother] ushered them into the home. [Mother] refused to allow DHS to enter the home or to assess [Y.W.-B.] and [N.W.-B.]. and that [sic] stated that she would not comply with DHS absent a court order. [Mother] further stated that the children had not been with her when she protested outside of the PHA offices; and that the children were fine and were not in need of assessments or services. [Mother] exhibited verbally aggressive behavior toward DHS and filmed the interaction outside of the home with her telephone. DHS did not enter the home, but observed from the outside of the home that one of the home's windows was boarded up.

m. On May 22, 2019, DHS returned to family's home with officers from the Philadelphia Police Department (PPD). [Mother] and [Father] continued to exhibit aggressive behavior and refused to allow DHS to enter the home. The PPD officers suggested that DHS obtain a court order to access the home.

*Id.* at ¶¶ l-m. At the hearing on the petitions, DHS investigator Tamisha Richardson testified that she was the DHS worker that went out to the family's home that day and contradicted the assertion in the petition that she observed Mother usher the children into the home, testifying that she did **not** observe Mother and the children enter the home. N.T., 6/11/19 at 8-9 (emphasis added).

The petitions also set out the family's past involvement with DHS, which included GPS reports from September and October 2013 alleging, *inter alia*, deplorable home conditions, including holes in the walls, a flea infestation, lack of interior walls, internal structure of the home being exposed, a lack of water and heat service, and that the home appeared to be structurally unsound. Petitions to Compel at ¶ c. These reports were determined to be valid and led to the older child, Y.W.-B., being adjudicated dependent and placed in DHS custody. *Id.* at ¶¶ c, e. Y.W.-B. remained in foster care until July 20, 2015 when custody was returned to Mother and Father. *Id.* at ¶ f. The family continued to receive services through DHS until November 10, 2015 when DHS's supervision ended and Y.W.-B.'s dependency case was discharged. *Id.* at ¶ h-i. N.W.-B. was not born until January 23, 2015. *Id.* at ¶ g. In addition to the family's prior involvement with DHS referenced in the Petitions to Compel, at the hearing on the petitions the trial court noted it had prior involvement with the family.

At the hearing on DHS's petitions on June 11, 2019, Richardson was the sole witness. She testified that DHS received a GPS report on May 22, 2019 alleging homelessness and inadequate basic care, naming the children as the victims and the parents as the alleged perpetrators. N.T. 6/11/19, 5. She further testified that she went to parents' house and the parents made it clear to her that she would not be permitted inside the home. *Id.* In response to questioning from the court, Richardson testified that she needed to view the inside of the home to make sure the home was appropriate, the utilities were working, there was food in the home, beds for the children, and so forth. *Id.* at 6.

Based on the information before it, the trial court determined that probable cause existed to order parents to cooperate with an assessment of the home. In support of its determination, the trial court stated:

> The Motion to Compel and the hearing confirmed that one of the main factors of the DHS investigation is the matter of homelessness and if the alleged address of the family was suitable for Children. The home assessment by DHS would be able to determine if the claims for both homelessness and inadequate care of Children have merit.

Trial Court Opinion, 9/9/19 at 7. In determining that probable cause existed the trial court also found Richardson's testimony credible. *Id.* at 8.

I disagree with the Majority's contention that since DHS located the family's home the allegations of homelessness were moot and needed no further investigation. Majority Opinion at 37-38. Even though Richardson received an address where the family purportedly resided and talked to the family outside that residence, that does not mean the family resided there or that the residence was suitable for children. As Richardson testified, she needed to observe the inside of the house to determine if the home was appropriate for the children. N.T. at 6. The allegations of homelessness were also not moot by the unsupported assertion in the petitions that DHS observed Mother usher the children into the home. First, Richardson testified that she was the DHS worker who went to the residence and she did not observe Mother and the children enter the residence. N.T. at 8-9. The conflict between the petitions and Richardson's testimony was a factual question for the trial court to answer. Further, even if Richardson did observe Mother usher the children into the residence, merely entering a home is not proof that one resides there. I also disagree with the Majority's assertion that Richardson's testimony confirmed that the family was not homeless. Majority Opinion at 38. This assertion is directly contradicted by Richardson's own testimony that she had "no idea" if the family was living at the address because she was not permitted access into the home. N.T. at 10.

As the allegations of homelessness remained an issue, along with the allegations of inadequate basic care, there was a clear connection between the allegations in the petition and the requested investigative home visit. Only by observing the inside of the

residence could DHS determine if the family resided there and if it was an appropriate place for the children to live.

In addition, I also disagree with the Majority's determination that the information regarding the family's prior involvement with DHS was stale because the family's prior experiences with DHS ended in 2015, four years prior to the Petitions to Compel, and there was no evidence of any reoccurrence of the prior issues. Majority Opinion at 43. The age of information is a factor in determining probable cause. *Commonwealth v. Leed*, 186 A.3d 405, 413 (Pa. 2018). "However, staleness is not determined by age alone, as this would be inconsistent with a totality of the circumstances analysis." *Id.* (citing *Commonwealth v. Hoppert*, 39 A.3d 358. 363 (Pa. Super. 2012)). The remoteness of information can affect the weight a court chooses it give the information. Courts must also consider the nature of the allegations and the type of evidence. *Hoppert*, 39 A.3d at 363. The Petitions to Compel indicated that in 2013 DHS received GPS reports regarding the family, asserting*, inter alia*, deplorable home conditions, including holes in the walls, flea infestation, lack of interior walls, internal structure of the home being exposed, a lack of water and heat services, and that the home appeared structurally unsound. Petitions to Compel at ¶ c. Those reports were determined to be valid. *Id.* In addition, at the hearing on the current Petitions to Compel the trial judge referenced his prior involvement with the family. N.T. at 12, 18. Richardson testified that DHS received a GPS report alleging homelessness and inadequate basic care on May 22, 2019. *Id*. at 5. The family's prior involvement with DHS involved issues regarding the adequacy of the family's housing. The housing related allegations at issue in the Petitions to Compel were similar to the housing related problems at issue in the family's prior involvement with DHS. Those previous reports were determined to be valid and led to a dependency case. Therefore, the family's prior involvement with DHS was relevant to the allegations in the

Petitions to Compel and not stale, as the allegations were of a similar nature. The fact that DHS received the previous GPS reports over five years prior to receiving the current one, and Y.W.-B.'s dependency case was closed approximately four years prior, goes to the weight the trial court should give the information. The trial court, however, should not have been required to ignore the family's prior involvement in considering the totality of the circumstances of the case. Rather, the trial court should have been permitted to consider the family's prior history as part of the totality of the circumstances in coming to its probable cause determination.

Further, due to the nature and purpose of child protective investigations, as discussed *supra*, "[w]hat an agency knows and how it acquired its knowledge should not be subject to the same restrictions facing police seeking to secure a search warrant." *In re Motion to Compel*, 875 A.2d at 380 (Beck, J. concurring). This is especially true in regards to anonymous sources. Anonymous sources in the child protective arena differ significantly from confidential informants in the criminal arena. Anonymous sources in child protective investigations are often family members or those close to the family who are in the best position to observe a child's circumstances and whether the child is in need of services. Due to the relationship with the care giver, these sources would be less likely to report abuse or neglect if they were not given anonymity. Confidential informants in criminal cases, on the other hand, are often involved in criminal activity themselves and provide information to law enforcement authorities in an attempt to extricate themselves from legal trouble. Information given in self-interest should be looked upon more cautiously than information given by an individual concerned about the health and safety of a child. Therefore, in the child protective arena courts should be able to consider anonymous reports as part of the totality of circumstances analysis in coming to a

probable cause determination without the same corroboration requirements that are applicable to criminal informants.

The Majority also criticizes DHS's failure to call the anonymous source to testify at the hearing on the Petitions to Compel based, at least in part, on its incorrect determination that

> DHS had no obligation to keep the identity of the source of the GPS report confidential or to shield him or her from testifying at the evidentiary hearing. The trial court mistakenly believed that DHS was legally required to keep the name of the anonymous source confidential and, accordingly, citing 23 Pa.C.S. § 6340(c), sustained DHS's objection when Mother's counsel asked Richardson to identify the anonymous source of the GPS report. Section 6340(c) of the CPSL, however, only requires DHS to keep confidential the name of an anonymous reporter of a **CPS** report, I,e,, a report alleging child abuse. No similar provision in the CPSL protects the source of a **GPS** report, i.e., a report of, *inter alia*, child neglect,

Majority Opinion at 46-47 (emphasis in original) (internal citations omitted). Section 6340(c), entitled "Protecting identity," provides that, except under specific limited circumstances not at issue here, the release of information by a child protective services agency "that would identify the person who made a report of suspected child abuse or who cooperated in a subsequent investigation is prohibited." 23 Pa.C.S. § 6340(c). The CPSL also prohibits the release of the same information as to an individual who makes a GPS report. Section 6375(o) of the CPSL, entitled "Availability of information," states "[i]nformation related to reports of a child in need of general protective services shall be available to individuals and entities **to the extent they are authorized to receive information under section 6340 (relating to release of information in confidential reports)**." 23 Pa.C.S. § 6375(o) (emphasis added). Since Section 6340(c) prohibits the disclosure of information that would identify a person who made a report of child abuse, Section 6375(o) likewise prohibits the disclosure of information that would identify an

individual who made a GPS report, like the anonymous source at issue here. The trial court, therefore, correctly sustained DHS's objection to Mother's counsel's question asking Richardson to identify the anonymous source.

Even if DHS was not statutorily required to keep the anonymous source's identity confidential, which it was, it was under no obligation to call the source to testify at the hearing on the petitions and provide Mother an opportunity to cross-examine him or her, as the Majority implies. Majority Opinion at 47. There is no legal requirement, constitutional, statutory, or rule-based, that the subject of a request for an order to compel cooperation with an investigative home visit must be permitted to cross examine a source prior to a trial court making a probable cause determination. There is no requirement that the court hold a hearing on the petition at all.

When reviewing a trial court's probable cause finding, it is a reviewing court's duty to ensure there was "a substantial basis for concluding probable cause existed. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner." *Jones*, 988 A.2d at 655 (quoting *Commonwealth v. Torres*, 764 A.2d 532, 537-38, 540 (Pa. 2001)). In so doing, "a reviewing court [is] not to conduct a *de novo* review of the issuing authority's probable cause determination, but [is] simply to determine whether or not there is substantial evidence in the record supporting" the finding of probable cause. *Id.* (quoting *Torres*, 764 A.2d at 537-38, 540). In order to have met the probable cause standard in this case, there had to be a fair probability that the children had suffered from abuse or neglect and that evidence relating to those allegations may be found in the residence. The allegations set forth in the Petitions to Compel combined with Richardson's testimony and the trial court's knowledge of the family's prior involvement with DHS support the trial court's

determination that DHS satisfied that standard here.  Therefore, I respectfully dissent as I would affirm the Superior Court's holding.