J-A20025-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: D.R.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 716 EDA 2024 |

Appeal from the Order Entered February 9, 2024
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-DP-0000913-2023

| | | |
|---|---|---|
| IN THE INTEREST OF: A.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: D.R.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 717 EDA 2024 |

Appeal from the Order Entered February 9, 2024
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-DP-0000914-2023

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and LANE, J.

MEMORANDUM BY PANELLA, P.J.E.:          **FILED NOVEMBER 1, 2024**

In these consolidated cases, D.R.M. ("Mother") appeals the February 9, 2024 orders that compelled her to cooperate with the investigation conducted by the Philadelphia Department of Human Services ("DHS") regarding allegations of abuse or neglect as to her daughter, A.R., born in March 2014,

and her son, A.J., born in May 2021 (collectively, "the Children").[1] After careful review, we affirm due to Mother's waiver of her underlying claims.

We gather the relevant factual and procedural history of this matter from the certified record. On August 15, 2023, DHS received an anonymous child protective services ("CPS") report alleging that then two-year-old A.J. burned himself with a curling iron while in Mother's care. *See* N.T., 1/22/2024, at 7. According to Jaleesa Simmons, DHS intake social worker, the report stated that A.R., then age nine, was pretending to curl her doll's hair with a flat iron when A.J. "got a hold of the flat iron and allegedly burned his neck and arms." *Id.* Ms. Simmons explained that the report listed the Children as alleged victims and Mother as the alleged perpetrator. *See id.*

From August 15, 2023, to September 14, 2023, Ms. Simmons attempted, unsuccessfully, to investigate the allegations set forth in the CPS report. *See id.* Accordingly, on October 2, 2023, DHS filed a motion to compel Mother's cooperation with the investigation into the allegations from the August 15, 2023 CPS report with respect to each child. Additionally, DHS also requested access to Mother's residence to perform an in-home evaluation.

---

[1] The record reveals that the Children's father, A.R. ("Father"), lives in Pittsburgh, Pennsylvania, and is not involved in the care of the Children. *See* N.T., 1/22/2024, at 10. He did not participate in the instant proceedings.

On January 22, 2024, the court conducted an evidentiary hearing.[2] DHS presented the testimony of Ms. Simmons. Mother did not appear, but she was represented by counsel.[3] The Children were also not present but were represented by a guardian *ad litem*.

Ms. Simmons testified that she attempted to meet with Mother on various occasions in the course of her investigation. Specifically, on August 15, 2023, she went to Mother's home, unannounced, to investigate the allegations of the CPS report and assess the safety of the Children. *See* N.T., 1/22/2024, at 8. Because the family was not present, Ms. Simmons left a letter in Mother's mailbox. *See id.* The same day, Ms. Simmons was able to contact Mother via telephone and arranged to meet her at the family's home the following day. *See id.* However, when Ms. Simmons arrived the next day, August 16, 2023, Mother did not answer the door. *See id.* On September 13, 2023, Ms. Simmons again attempted to meet with Mother. *See id.* Mother informed Ms. Simmons that the family was available at 6:00 p.m., but, once again, she did not answer the door when Ms. Simmons appeared at the

_____

[2] Before the hearing on January 22, 2024, the court had scheduled the proceeding for October 10, 2023, November 7, 2023, and December 5, 2023. The matter was continued to ensure Father received service, to allow the Children's guardian *ad litem* an opportunity to review case law provided by Mother at the November 2023 hearing, and due to witness unavailability.

[3] Mother's counsel informed the court that her father passed away the morning of the hearing and, therefore, she would not be in attendance. *See* N.T., 1/22/2024, at 5.

agreed-upon time. *See id.* On September 14, 2023, Ms. Simmons attempted to speak with A.R. at her school, but learned that she was no longer enrolled there, and that the school did not have any information about where she currently attended. *See id.* Later that day, Ms. Simmons went to Mother's residence. *See id.* Although Mother advised Ms. Simmons that she would meet her downstairs, Mother never appeared. *See id.* Finally, Ms. Simmons further testified that she briefly spoke with Mother on the telephone about the CPS report. *See id.* at 9. Mother denied the allegations and told Ms. Simmons that "somebody is trying to get her, trying to put a target on her back." *Id.*

On January 22, 2024, the trial court entered orders granting DHS's motions to compel Mother's cooperation with their investigation of the August 15, 2023 CPS report, including an in-home evaluation. On January 31, 2024, however, Mother filed emergency petitions to stay pending an appeal of the cooperation orders. In response, the court issued a rule to show cause and, ultimately, held a hearing on February 9, 2024. Following argument, the court entered orders denying Mother's petitions to stay. Separately, the court entered revised orders granting DHS's petitions to compel Mother's cooperation with their investigation. Importantly, the revised orders no longer permitted DHS access to Mother's home, thus eliminating the potential for a home evaluation. *See* Order, 2/9/2024, at 1. Specifically, the orders merely compelled Mother to make the Children available at "a date, time and location" mutually convenient between the parties so DHS could interview the Children.

*See id.* The orders specifically stated that DHS would "interview the child outside of the home." *Id.*; *see also* N.T., 2/9/2024, at 9 ("The [c]ourt does not find that it's necessary for DHS to enter the home to interview the [C]hildren."). It is also undisputed that Mother subsequently complied with the February 9, 2024 orders. *See* Mother's Brief, at 12.

Mother timely filed notices of appeal along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). In response, the trial court filed its Rule 1925(a) opinion on April 4, 2024.

On appeal, Mother purports to raise a single, broad issue for our review, which she has framed as follows: "Did the trial court err in granting DHS's motion to compel cooperation?"[4] Mother's Brief, at 7. At the outset, Mother contends that her appeals are not moot.[5] *See id.* at 15-16.

Mother also includes various substantive arguments in her brief which we now summarize. She first argues that the trial court's orders directing her

_____

[4] We note with disapproval the failure of the Children's GAL to file a brief on behalf of his clients.

[5] We acknowledge that Mother's undisputed compliance with the trial court's cooperation orders arguably renders this matter moot. Our case law, however, provides a relevant exception to the mootness doctrine for appeals of this nature. *See In re Petition to Compel Cooperation with Child Abuse Investigation*, 875 A.2d 365, 370 (Pa. Super. 2005) (holding that appeals stemming from orders compelling parents to comply with CPS investigations are "clearly capable of repetition, yet evading appellate review" and present "questions of great public importance, implicating fundamental constitutional rights enjoyed by every citizen of this Commonwealth"). Accordingly, we do not find Mother's claims to be moot. *See id.*

to allow the Children to be interviewed by DHS constituted a seizure within the meaning of the Fourth Amendment and Article I, Section 8. **See** Mother's Brief, at 16. Initially, Mother asserts that the seizure was a custodial detention, requiring probable cause. **See id.** at 24. However, she argues in the alternative that, at the very least, the order compelled an investigatory detention, requiring reasonable suspicion. **See id.** at 17, 27.

Mother further claims that the trial court abused its discretion in granting DHS's motions to compel based solely on the trial court's analysis under the Child Protective Services Law ("CPSL"), 23 Pa.C.S.A. §§ 6301 *et seq.*, without issuing a finding of probable cause or reasonable suspicion. **See id.** at 33-34. Thereafter, she asserts that the trial court erred because DHS failed to establish probable cause or reasonable suspicion. **See id.** at 34-60.  Mother relies heavily on **Interest of Y.W.-B.**, 265 A.3d 602, 627-628 (Pa. 2021) and **Petition to Compel**, **supra**, to support her contentions.

Finally, Mother concludes her brief with a slew of subsidiary arguments, namely, that (1) the CPS report was stale; (2) DHS failed to establish a fair probability that it will discover evidence of child abuse by interviewing the Children; and (3) the trial court's order lacked constitutionally required particularity. **See id.** at 60-67. We find all of Mother's issues waived due to a lack of specificity on her Rule 1925 concise statement.

Specifically, Rule 1925(b)(4) provides appellants with the requirements of their concise statement. Importantly, although the issues shall be "concisely

identified," appellants must "assert [] sufficient detail to identify the issue to be raised for the judge." *See* Pa.R.A.P. 1925(b)(4)(ii). Further, "[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii).

Mother failed to identify any of her many appellate issues with sufficient detail in her Rule 1925(b) concise statements. Therein, Mother purported to present a single issue, which she baldly framed, as follows: "The trial court erred in granting DHS's motion to compel cooperation." This brief sentence failed to apprise the trial court of the scope and nature of her appellate arguments.

Due to Mother's inappropriate lack of specificity, the trial court did not have the opportunity to address any of her specific claims she subsequently proffers in her brief. Indeed, Mother's brief includes seven major headings highlighting specific arguments with respect to the constitutions of the United States and Pennsylvania. Instead of apprising the trial court of these arguments in her concise statements or statements of questions involved in her brief, Mother relied upon a single general sentence to preserve her claims on appeal.

Since the trial court did not have an opportunity to address any of Mother's claims in its Rule 1925(a) opinion, we must conclude that her issues are waived. *See* Pa.R.A.P. 1925(b)(4)(vii); *see also Kaur v. Singh*, 259 A.3d 505, 510 n.2 (Pa. Super. 2021) (finding waiver of an issue where the former

husband failed to specifically raise a constitutional challenge in his Rule 1925(b) concise statement); *see also In re M.Z.T.M.W.*, 163 A.3d 462, 466 (Pa. Super. 2017) (reiterating that issues not included in a concise statement of errors complained of on appeal and statement of questions involved are subject to mandatory waiver).

Even assuming *arguendo* Mother's claims are not waived, we also note that Mother failed to address critical distinctions between *Y.W.-B.*, *Petition to Compel*, and the case *sub judice*. In *Y.W.-B.*, our Supreme Court determined that the protections of the Fourth Amendment to the U.S. Constitution and Article I, Section 8 of the Pennsylvania Constitution apply in the context of "searches conducted in civil child neglect proceedings, which have the same potential for unreasonable government intrusion into the sanctity of the home" as similar searches conducted during criminal investigations. *Y.W.-B.*, 265 A.3d at 627-628; *see also Petition to Compel*, *supra* (finding that, in the context of a "home visit," federal and state constitutional provisions governing searches and seizures applied to CPSL). The holding in *Y.W.-B.* solely concerned whether there was probable cause to support a search of a parent's home in the course of an investigation. *See Y.W.-B.*, 265 A.3d at 635 ("Mother's constitutional rights were violated. The order compelling her cooperation with a governmental intrusion into her home was deficient for want of probable cause.").

In plain contrast, the trial court's February 9, 2024 orders explicitly stated that the interview of the Children did not have to occur at Mother's residence, thus eliminating an intrusion into Mother's home. As detailed above, the orders merely required that she cooperate with the investigation into the August 15, 2023 CPS report by allowing DHS to interview the Children. Accordingly, to the extent Mother relies on the above-referenced cases, we would determine that they are inapplicable as the case at bar provides a wholly different set of circumstances. While some level of suspicion is likely required to interview children outside of the home as part of an investigation under the CPSL, we are not aware of any case that establishes the requisite legal standard with specificity. Accordingly, we decline to address this potential issue of first impression on questionable procedural grounds. ***See In re Fiori***, 673 A.2d 905, 909 (Pa. 1996) (observing "the sound tenet of jurisprudence that courts should avoid constitutional issues when the issue at hand may be decided upon other grounds.").

Based on the foregoing, we hold that Mother has waived her challenge to the February 9, 2024 orders compelling her to make the Children available to DHS for an interview regarding the August 15, 2023 CPS report. Thus, we affirm.

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/1/2024