J.A21007/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: MA.W., C.W., | : | IN THE SUPERIOR COURT OF |
| AND M.W. | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: J.K., MOTHER | : | |
| | : | No. 840 EDA 2015 |

Appeal from the Orders Entered March 5, 2015
In the Court of Common Pleas of Carbon County
Criminal Division No(s).: CP-13-DP-0000025-2014
CP-13-DP-0000027-2014
CP-13-DP-0000028-2014

BEFORE: ALLEN, MUNDY, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED AUGUST 14, 2015**

Appellant, J.K. ("Mother"), appeals from the orders entered March 5, 2015,[1] denying the petitions for dependency as to Ma.W., C.W., and M.W. ("Children") and directing that the Carbon County Office of Children and Youth Services ("CYS") be permitted to enter Children's home to complete

---

[*] Former Justice specially assigned to the Superior Court.

[1] We note Mother filed one notice of appeal from three orders. The Pennsylvania Rules of Appellate Procedure address the requisites for an appealable order and provide: "Every order shall be set forth on a separate document." Pa.R.A.P. 301(b). This Court in **Dong Yuan Chen v. Saidi**, 100 A.3d 587 (Pa. Super. 2014), noted that "[t]aking one appeal from separate judgments is not acceptable practice and is discouraged." **Id.** at 589 n.1 (citation omitted). The **Saidi** Court declined to find the procedural error fatal to the appeal because the trial court addressed the issues. **Id.** Similarly, we find the procedural error is not fatal in the case *sub judice* because the trial court addressed the issue. We have amended the caption accordingly.

the assessment required by 55 Pa. Code § 3490.232.[2]  Mother argues there

was no probable cause to allow a government agency access to Children's

home.[3]  We affirm.

---

[2] The code provides, *inter alia*, as follows when the agency receives a report alleging a need for general protective services ("GPS"):

> (a) The county agency shall be the sole civil agency responsible for receiving and assessing all reports alleging a need for general protective services. . . .

> \* \* \*

> (f) The county agency **shall** see the child and **visit the child's home during the assessment period**.  The home visits shall occur as often as necessary to complete the assessment and insure the safety of the child.  There shall be a least one home visit.

> \* \* \*

> (h) The county agency may make unannounced home visits.

> \* \* \*

> (j) The county agency shall initiate the appropriate court proceedings and assist the court during all stages of the court proceedings if the county agency determines that general protective services are in the best interest of a child and if an offer of an assessment, **a home visit or** services **is refused by the parent**.

55 Pa. Code § 3490.232(a), (f), (h), (j) (emphases added).  GPS in Section 6303 of the Child Protective Services Law ("CPSL") includes "[t]hose services and activities provided by each county agency for cases requiring protective services, as defined by the department in regulations."  23 Pa.C.S. § 6303.

[3] We note the issue is not moot based upon the denial of the dependency petitions.

We adopt the facts and procedural history of this case as set forth in the trial court's opinion. Trial Ct. Op., 4/13/15, at 2-15. On March 5, 2015, the court denied the petitions for dependency and ordered that CYS be permitted to enter Children's home. This timely appeal followed. Appellant filed a court-ordered[4] statement of errors complained of on appeal in each case. Mother raises the following issue[5] for our review:

> It is well settled that the proper inquiry in a dependency adjudication follows a bifurcated analysis: "Is the child at this moment without proper parental care or control?; and if so, is such care or control immediately available?" Because the element of time is integral to the dependency adjudication, each petition in this instance necessarily implicates a different cause of action. Thus, technical res judicata cannot apply.

*In re N.A.*, 116 A.3d 1144, 1149 (Pa. Super. 2015) (footnote and citations omitted), *appeal denied*, ___ A.3d ___ Pa. 2015).

[4] Appellant did not comply with Pa.R.A.P. 1925(b), which provides, *inter alia*, in a children's fast track appeal, the concise statement of errors complained of on appeal shall be filed with the notice of appeal. Pa.R.A.P. 1925(b)(2)(i). We do not find this defect fatal to the appeal. *See In re K.T.E.L.*, 983 A.2d 745, 747 (Pa. Super. 2009) (holding failure to file 1925(b) statement concomitantly with a children's fast track appeal is considered defective notice of appeal, the disposition of which is decided on a case by case basis).

[5] We note Mother raised an additional issue on appeal.

> When a government agency files multiple dependency petitions, involving three siblings residing in the same home with the same mother and father, all of the allegations in the petition and all of the evidence presented at the single hearing is identical as to each minor, no allegation or piece of evidence is peculiar to one child, and the Trial Court enters three identical Orders, disposing of

When a government Agency presents evidence that the yard of a minor's house is cluttered with mostly unidentified material, that an unnamed informant reported that the house was messy, had a boarded-up window and **might** have had a hole in the wall, but presented no evidence that the house was unsafe or that [C]hildren were in danger and, in fact, testified that [CYS] had no concern for the safety of [C]hildren, does the [t]rial [c]ourt err in concluding that probable cause exists to believe that evidence of child abuse or endangerment may be found in the home?

Mother's Brief at 5.

Mother argues that probable cause is required to permit CYS to access her home pursuant to Article 1, Section 8 of the Pennsylvania Constitution. *Id.* at 18. She avers there was no probable cause for a home inspection. *Id.* Mother contends CYS can only inspect the home pursuant to 55 Pa. Code § 3490.55(i)[6] when investigating a report of suspected child abuse.

---

three identical petitions, should an appeal from those three decisions be quashed for failing to file individual appeals?

Mother's Brief at 5. We have resolved this issue. *See* note 1.

[6] Section 3490.55 requires a home visit when the agency is investigating reports of suspected child abuse. Section 3490.55(i) provides:

(i) When conducting its investigation, the county agency shall visit the child's home, at least once during the investigation period. The home visits shall occur as often as necessary to complete the investigation and to assure the safety of the child.

55 Pa. Code § 3490.55(i). The trial court found a home visit was required by 55 Pa. Code § 3490.232. Order, 3/5/15. In the case *sub judice* there were no allegations of child abuse in the petitions filed by CYS. Mother's reliance on Section 3490.55(i) is of no moment. The Code provides for a

*Id.* Mother claims that CYS "must allege and prove facts, 'amounting to probable cause to believe that an act of child **abuse or neglect** has occurred and evidence relating to such abuse will be found in the home.'" *Id.* at 19 (emphasis added) (citing *In re Pet. to Compel Cooperation with Child Abuse Investigation*, 875 A.2d 365, 377 (Pa. Super. 2005)).

Our review is governed by the following principles:

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re E.B.*, 83 A.3d 426, 430 (Pa. Super. 2013) (citation omitted).

In *In re Petition to Compel*, the parents appealed an "order compelling their cooperation with Susquehanna County Services for Children and Youth ("C & Y") for the scheduling and completion of a 'home visit' of their residence." *Id.* 875 A.2d at 368. The trial court granted C & Y's petition notwithstanding the fact that there was no dependency petition before the court.[7] *Id.* at 369. This Court opined:

---

home inspection when CYS receives a report of abuse and/or neglect. The issue of whether probable cause exists for the home inspection pertains in either case. *See In re Pet. to Compel*, 875 A.2d at 377, 379.

[7] In *In re Petition to Compel*, the home inspection had taken place. However, this Court declined to find the issues moot because "the issues before us are clearly capable of repetition, yet evading appellate review." *Id.* at 370-71.

[The a]ppellants' first substantive argument is that the court lacked jurisdiction to enter its order because C & Y had not filed a dependency petition. [The a]ppellants' position is that administrative regulations alone are insufficient to confer jurisdiction; and that in the absence of a petition filed pursuant to the Juvenile Act, 42 Pa.C.S.A. §§ 6301 *et seq.*, C & Y could not legally invoke the court's jurisdiction. We disagree.

The legislature's purpose in enacting the CPSL is stated in Section 6302(b):

> It is the purpose of this chapter to encourage more complete reporting of suspected child abuse; to the extent permitted by this chapter, to involve law enforcement agencies in responding to child abuse; and to establish in each county protective services for the purpose of investigating the reports swiftly and competently, providing protection for children from further abuse and providing rehabilitative services for children and parents involved so as to ensure the child's well-being and to preserve, stabilize and protect the integrity of family life wherever appropriate or to provide another alternative permanent family when the unity of the family cannot be maintained. It is also the purpose of this chapter to ensure that each county children and youth agency establish a program of protective services with procedures to assess risk of harm to a child and with the capabilities to respond adequately to meet the needs of the family and child who may be at risk and to prioritize the response and services to children most at risk.

23 Pa.C.S.A. § 6302(b).

The CPSL charges the county agencies with investigating each report of suspected child abuse:

> Upon receipt of each report of suspected child abuse, the county agency shall immediately commence an appropriate investigation and see the child immediately if emergency protective custody is required or has been or shall be taken or if it cannot

> be determined from the report whether emergency protective custody is needed. Otherwise, the county agency shall commence an appropriate investigation and see the child within 24 hours of receipt of the report. The investigation shall include a determination of the risk of harm to the child or children if they continue to remain in the existing home environment, as well as a determination of the nature, extent and cause of any condition enumerated in the report and any action necessary to provide for the safety of the child or children.

23 Pa.C.S.A. § 6368(a). Our legislature has expressly authorized the Department of Public Welfare ("DPW") to adopt whatever regulations are necessary to implement the CPSL. 23 Pa.C.S.A. § 6348.

> Title 55 of the Pennsylvania Administrative Code, Section 3490.55, states in relevant part: "When conducting its investigation, **the county agency shall visit the child's home**, at least once during the investigation period. The home visits shall occur as often as necessary to complete the investigation and to assure the safety of the child." 55 Pa.Code § 3490.55(i).

> \* \* \*

> As we interpret the statute and agency regulations, C & Y must file a verified petition alleging facts amounting to probable cause to believe that **an act of child abuse or neglect** has occurred and evidence relating to such abuse will be found in the home.

> \* \* \*

> However, C & Y's responsibilities under the DPW regulations and the CPSL to investigate each and every allegation of **child abuse/neglect**, including visiting the child's home at least once during its investigation, do not trump an individual's constitutional rights under the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution.

*Id.* at 371-72, 377, 379 (emphases added).

In ***In re Petition to Compel***, Judge Beck filed a concurring opinion which was joined by Judge Ford-Elliot and Judge Joyce. Both Judge Beck and Judge Joyce also joined the majority opinion. Judge Beck opined:

> I join the soundly reasoned majority opinion because it finds that the Fourth Amendment right to be free from unreasonable searches and seizures applies to actions of a social services agency seeking to investigate an anonymous complaint of child abuse. I write separately, however, to add two observations in this case.
>
> First, I caution future parties and courts faced with this issue to consider that the purposes and goals underlying the activities of child protective agencies differ significantly from those of law enforcement generally. As a result, it would be unwise to apply the standard notion of probable cause in criminal law to cases such as these. While the Fourth Amendment certainly is applicable to these matters, we must not forget the very purpose for the Child Protective Services Law. Child Line and other services like it exist to encourage people to report incidents of potential danger to children. Likewise, we impose upon certain professionals an affirmative duty to report conduct they believe may be harmful to a child. For these reasons, simply requiring an agency to show "probable cause" as it is defined in the criminal law is not enough. Instead, the nature and context of each scenario must be considered.
>
> What an agency knows and how it acquired its knowledge should not be subject to the same restrictions facing police seeking to secure a search warrant. For instance, an agency's awareness of previous conduct on the part of parents would be relevant, indeed vital, information to include in a request for a court-ordered home visit. **What constitutes probable cause in the child protective arena is far different from what constitutes probable cause in the criminal law.** Social services agencies should be held accountable for presenting sufficient reasons to warrant a home visit, **but those same agencies should not be hampered from performing their duties because they have not satisfied search and seizure jurisprudence developed**

**in the context of purely criminal law**. I urge the courts deciding these issues to accord careful consideration to the unique circumstances they present.

*Id.* at 380 (emphases added).

In the instant case, CYS filed dependency petitions, indicating its efforts to visit Children's home and requesting the court to allow CYS to visit the home as part of its investigation.[8]

Instantly, the trial court opined:

> At the hearing on this petition, the caseworker, Alyssa Denardo, presented additional testimony regarding the condition of the home and her initial in-school visits with [C]hildren that are the subject of these petitions. She also identified a number of photographs that she took during her first visit to the home. The photos showed the yard of the home with garbage strewn around, several rolls of used carpeting, and a general state of "clutteredness." These photos were admitted as an exhibit, without objection. The caseworker also testified that [C]hildren have all been withdrawn from the Palmerton School District,[17] meaning there is no way for CYS to follow-up with speaking to [C]hildren regarding the interior of the home.
>
> *      *      *
>
> The report to [CYS] was regarding the condition and cleanliness of the home. The petitions detailed the condition of the exterior of the home, which included a boarded up window inside of the home, which was clearly visible from outside. The petitions included information from the caseworker's interviews with [C]hildren. The petitions also identified the unwillingness of the natural parents to allow [CYS] into the home. This [c]ourt finds that this information, in and of itself, would be sufficient to justify the probable cause necessary for an order

---

[8] We note that CYS did not seek the removal of Children from the home.

- 9 -

permitting [CYS] to enter [Children's home] to conduct their investigation as required by the CPSL.

_____

[17] In this [c]ourt's opinion, the fact that [C]hildren were removed from the Palmerton School District at a time when [CYS] wanted to question them about the home suggests "something to hide" relating to the condition of the home.

Trial Ct. Op. at 10-11, 12.

At the hearing, Marianne Grabarits, a caseworker supervisor with CYS testified that when CYS receives a GPS report, the case-worker is required, *inter alia*, "to complete a home assessment." N.T., 1/30/15, at 9, 11. She assigned the report to the caseworker, Ms. Denardo. *Id.* at 18.

Ms. Denardo testified regarding the report CYS received on November 13, 2014, indicating concern with the cleanliness of the home, "holes in the home and boarded up windows." *Id.* at 25, 26. She interviewed Children at school on November 20, 2014. *Id.* at 26, 27. C.W. "told me that it is a little dirty at the home, that dad does projects and doesn't always finish them and that's why it is dirty at the home." *Id.* at 26. Ma.W. told her that the house was "sort of dirty, that dad boarded up a window in front to have privacy from the road." *Id.* at 27. She also stated "that they had 13 cats[9] and

_____

[9] We note that Mother's counsel asked whether Ms. Denardo was "aware that the 19 cats were outside cats from the farm up the road[.]" *Id.* at 55. She responded that she was not "aware of that." *Id.*

- 10 -

three dogs." *Id.* M.W. stated "it's a little dirty in the house. She did say there are no holes and the house is not boarded up." *Id.*

Ms. Denardo went to the home on December 5, 2014,[10] and "saw that the outside was cluttered and boarded up where it looked like it could have been a window." *Id.* at 28. She took six photographs and described them to the court. *Id.* at 30. "There is a bunch of garbage, about three or four garbage [sic] and it looks like maybe carpet rolled up." *Id.* It was located "towards the end of the driveway." *Id.* The second photograph depicted what looked to be "a barn of some kind." *Id.* at 31. She stated she "took the photo because of the materials that are out there, with it being dirty and all the materials." *Id.* The third photograph was of the home and it depicted a trailer. *Id.* The fourth photograph showed "the trailer, the home. And as you can see, here it's boarded up." *Id.* at 32. The fifth photograph of the trailer "is the close up of the front entrance of the home." *Id.* at 32-33. She took the photograph "[b]ecause of all the clutteredness and the materials that are right outside of the home." *Id.* at 33. The last photograph shows "right here is where you step into the house, the porch, and that is all the clutteredness." *Id.*

She went to the home again and Father told her "I am not letting anyone in or under the government or bureaucracy of the government into

---

[10] She attempted to go to the home on November 20, 2014, but could not find it. *Id.* at 27-28. She tried to go to the home on November 26th but was unable "to make it out there" due to inclement weather. *Id.* at 28.

my house and that is why I have that sign." *Id.* at 35. The sign said "no federal, state or agency [sic] allowed on this property without documentation." *Id.* at 36.

Ms. Denardo testified she called the Palmerton School District on January 6, 2015. *Id.* at 37. C.W. had not been in school on January 2nd, January 5th and January 6th. *Id.* She called Palmerton Junior High and was told Ma.W and M.W.'s were withdrawn from the school district. *Id.* CYS was not asking for Children to be removed from the home. *Id.* at 43. CYS is requesting that Children be adjudicated dependent so that the agency could complete its evaluation. *Id.* "There was a report that came in that children come to school not clean." *Id.* at 51.

The trial court denied the petition for dependency but found "in light of the testimony and evidence presented at the hearing, probable cause was shown to warrant an order directing that [CYS] shall be permitted to enter [Children's] home . . . ." Order, 3/5/15. We discern no abuse of discretion. *See In re E.B.*, 83 A.3d at 430. Instantly, there was probable cause to warrant an order for a home visit. *See* 55 Pa. Code § 3490.232; *In re Pet. to Compel*, 875 A.2d at 374, 380. Accordingly, we affirm.

Orders affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/14/2015</u>

IN THE COURT OF COMMON PLEAS OF CARBON COUNTY, PENNSYLVANIA
JUVENILE

IN THE INTEREST OF
 Ma.W.      : No. 25 DP 14

IN THE INTEREST OF
 C.W.       : No. 27 DP 14

IN THE INTEREST OF
 M.W.       : No. 28 DP 14


Kim M. Christie, Esquire  Counsel for Carbon County Children & Youth

Mark E. Combi, Esquire   Guardian ad Litem for Ma.W., C.W., & M.W.

Robert J. Magee, Esquire  Counsel for J.K., mother of Ma.W., C.W., & M.W.

**MEMORANDUM OPINION**

Matika, J. – April 13, 2015

 On March 5, 2015, this Court issued an Order denying the Carbon County Office of Children and Youth Services' Petitions for Dependency after conducting a hearing[1] thereon. However, this Court also stated in the order that there was sufficient evidence presented for an order directing that the Carbon County Office of Children and Youth Services be permitted to enter the home of the subject children. It is this part of the Order that

---

[1] Separate petitions were filed involving four (4) of the W. children. However, the oldest child (B.W.) has turned 18 and was no longer subject to a

[FM-18-15]

1

J.K., the natural mother of the minors, appeals. This memorandum opinion is offered to the Superior Court, in accordance with Pennsylvania Rule of Appellate Procedure 1925(a), to expand upon the brief ruling and rationale set forth in the March 5, 2015 order. Respectively, this Court recommends to the Honorable Superior Court to dismiss Defendant's appeal accordingly.

## FACTUAL AND PRODECURAL BACKGROUND

The Carbon County Office of Children and Youth Services received a report on November 13, 2014 which expressed concerns about the conditions of the home where the children were living. A caseworker for Children and Youth spoke to each of the children at their respective schools, who gave varying accounts of the state of the house, ranging from the home being "a little dirty"[2] to "dirty"[3] to "sort of dirty" with a "boarded up window in the front"[4] of the home. On December 5, 2014, the caseworker went to the family's home to investigate, where she reported that the outside area of the home was "cluttered with random

---

Children and Youth action. The hearings on the other three (3) children were consolidated.
[2] Dependency Petition of M.W.
[3] Dependency Petition of C.W.
[4] Dependency Petition of Ma.W.

[FM-18-15]

2

objects" and there was a boarded up hole where a window used to be. The caseworker approached J.W., the natural father of the children, informed him of the allegations regarding the cleanliness of the home and requested permission to check the inside of the house. J.W. refused and asked the caseworker to leave.

On December 8, 2014, the caseworker called the home phone, which was answered by J.K. The caseworker explained that she had visited the home and was denied entry. The caseworker explained the allegations to J.K., to which J.K. responded that Children and Youth had no business being involved in the matter. The caseworker asked for permission to check the home, which J.K. denied before hanging up on the caseworker. On December 22, 2014, the caseworker went to the home again to attempt to investigate the inside of the residence. J.W. once again refused to allow the caseworker into the home, at which time he was informed that the agency would be filing petitions for dependency if the family continued to refuse to cooperate. The petitions were filed on December 24, 2014.[5]

---

[5] The caseworker also testified that in early January, she contacted the Palmerton School District to speak to the children again, as she had previously spoken to all three (3) of them in a school setting. The

[FM-18-15]

3

After a continuance for the natural parents to obtain counsel, a hearing was held on January 30, 2015. After taking the matter under advisement and allowing all parties to file briefs[6] regarding the case, this Court issued an order on March 5, 2015 denying the Petition for Dependency, but finding there was probable cause to issue an order that Children and Youth "shall be permitted"[7] to enter the home of the subject children to conduct the necessary investigation.

On March 13, 2015, J.K. filed an appeal to Superior Court. Thereafter, this Court directed that she, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) file a Concise Statement of Matters Complained of on Appeal, which was also timely filed. In this statement, Appellant J.K. raised two issues:

1) The Trial Court erred in determining that probable cause was shown so as to justify the intrusion into the home of J.K. by members of the Carbon County Office of Children and Youth to complete an assessment, when the only evidence presented was some pictures of a cluttered, non-dangerous yard, and a statement from some unidentified informant whose reliability is completely unknown that the house was

---

caseworker was informed that the children had all been withdrawn from the Palmerton School District in late December or early January.

[6] All counsel submitted "letter briefs" to chambers of the undersigned, none of which were lodged in this matter, and therefore, do not appear in the record.

[7] Order of Court, March 5, 2015.

[FM-18-15]

4

"messy", that there was a boarded up window, and that there "might have been a hole["] in some unidentified wall, and that the children when interviewed, appeared healthy, unharmed and clean; and

2) The Trial Court further erred, when, in the aftermath of dismissing the Petition for Dependency (the only matter then before the Court), the Court went on *sua sponte*, to Order J.K. to allow the Agency to enter her house and conduct an inspection, even though there was no surviving petition before the Court requesting any such relief.

The Court will address these issues accordingly.

## DISCUSSION

Once a county agency receives a report for General Protective Services ("GPS"), the Child Protective Services Law ("CPSL")[8] and Pennsylvania Administrative Code[9] have several requirements that must be fulfilled. For example, the county agency has sixty (60) days within which to complete an assessment.[10] In the course of such an assessment, "[t]he county agency shall see the child and visit the child's home during the assessment period."[11] Another section mandates that "[w]hen conducting its investigation, the county agency shall visit the child's home, at least once during the investigation period.

---

[8] 23 Pa. C.S.A. §§ 6301 *et seq.*
[9] 55 Pa. Code § 3490.232.
[10] *Id.* at § 3490.232(e).
[11] *Id.* at § 3490.232(f).

[FM-18-15]

5

The home visits shall occur as often as necessary to complete the investigation and to assure the safety of the child."[12] The law also permits the county agency to make unannounced home visits.[13] Finally:

> [t]he county agency shall initiate the appropriate court proceedings and assist the court during all stages of the court proceedings if the county agency determines that the general protective services are in the best interest of a child and if an offer of an assessment, a home visit, or services is refused by the parents.[14]

However, the statute does not elaborate on what "appropriate court proceedings" are when an assessment, a home visit, or services are refused by the parents. Further, another portion of the PA Administrative Code requires the county agency to petition the court if the "subject of the report of suspected child abuse refuses to cooperate with the county agency in an investigation, and the county is unable to determine whether the child is at risk."[15] Accordingly, it would appear to be the responsibility of the county agency, such as the Carbon County Office of Children and Youth Services, to determine what the

---

[12] 55 Pa. Code § 3490.55(g).
[13] Id. at § 3490.233(h)
[14] Id. at § 3490.232(j).
[15] 55 Pa. Code § 3490.73.

[FM-18-15]

6

proper petitions are and file them before the court hearing the matter.

Pennsylvania case law is surprisingly light in matters where a county children and youth agency has been denied entry into a home. The one case this Court found to be guiding on this issue was *In re: Petition to Compel Cooperation with Child Abuse Investigation.* 875 A.2d 365 (Pa. Super. Ct. 2005). In that case, the Susquehanna County Court of Common Pleas was presented with a "petition to compel cooperation with child abuse" based upon the refusal of alleged abusers to allow the Susquehanna County Services for Children and Youth to investigate their home based on a referral from Child Line. *Id.* at 368. The Superior Court found that the only issue before the trial court in that matter was "whether appellants were required to submit to a home visit as part of C&Y's investigation into the child abuse allegations." *Id.* at 369.

The Superior Court rejected the argument of Susquehanna County Services for Children and Youth that because the applicable language of the pertinent Pennsylvania laws required a home visit, the rights of the alleged abusers under the Fourth Amendment and/or Article I, Section 8 of Pennsylvania's

[FM-18-15]

7

constitution do not apply. *Id.* at 374. In reaching this determination, the Superior Court reviewed federal cases from both the Third Circuit Court of Appeals and the U.S. District Court for the Northern District of Ohio. *See Good vs. Dauphin Cty. County Soc. Servs. for Children and Youth*, 891 F.2d 1087 (3d Cir. 1989); *See also Walsh v. Erie County Dept. of Job and Family Servs.*, 240 F.Supp.2d 731 (N.D. Ohio 2003). The Superior Court wrote that although these were not binding authority, "we agree with the federal courts' analysis . . . and hold that the Fourth Amendment and Article I, Section 8 apply to the CPSL and the regulations written to implement it." *Petition to Compel, supra*, at 376-77.

Therefore, "C & Y must file a verified petition alleging facts amounting to probable cause to believe that an act of child abuse or neglect has occurred and evidence relating to such abuse *will be found in the home.*" *Id.* at 377 (emphasis added). In that case before the Superior Court, the Petition alleged, *inter alia*, that the referral was made for medical neglect, the parents had refused to allow the caseworker into the home, and the caseworker was required to complete a home visit. *Id.* at 378. The Superior Court found that the petition

[FM-18-15]

8

did not acknowledge sufficient facts to merit the issuance of a search warrant. *Id.* The court went on to say that after filing that petition, the county agency had several options "including further investigation to collect additional facts to support the issuance of a search warrant for appellants' home, and/or filing a formal petition for dependency." *Id.* at 379.

I. **Probable Cause**

When an appellant challenges the trial court's determination in a General Protective Services matter such as this, the Superior Court has stated:

> [t]he standard of review which this Court employs in dependency cases is broad. However, the scope of our review is limited in a fundamental manner by our inability to nullify the fact-finding of the lower court. We accord great weight to this function of the hearing judge because he is in the position to observe and rule upon the credibility of the witnesses and the parties who appear before him. Relying on this unique posture, we will not overrule his findings if they are supported by competent evidence."

*In re M.K.,* 636 A.2d 198, 201 (Pa. Super. Ct. 1994). *See also In Interest of J.M.,* 652 A.2d 877, 880-81 (Pa. Super. Ct. 1995).

In the instant matter, the dependency petitions were filed based upon the Carbon County Office of Children and Youth Services receiving an anonymous report regarding the cleanliness and conditions of the house in which the children were residing,

[FM-18-15]

9

along with corroborating statements from the children. As stated above, the Superior Court has held that the petition must aver that evidence of the issue the report was based on will be found in the home. Here, the issue is the condition of the home itself.

As stated above, the petitions filed by the Carbon County Office of Children and Youth Services contain statements from each of the children regarding the home being "dirty" or some comparable language. As part of the investigation, a caseworker went to inspect the home and found the outside to be "cluttered", and that the home did in fact have a boarded up window as previously indicated. After being denied entry to the home by the father in person on that occasion and by the mother via telephone, the caseworker went back to the home to again attempt to conduct the in-home assessment, and was again refused by the father.

At the hearing on this petition, the caseworker, Alyssa Denardo, presented additional testimony regarding the condition of the home and her initial in-school visits with the children that are the subject of these petitions. She also identified a number of photographs that she took during her first visit to

[FM-18-15]
10

the home. The photos showed the yard of the home with garbage strewn around, several rolls of used carpeting, and a general state of "clutteredness".[16] These photos were admitted as an exhibit, without objection. The caseworker also testified that the children have all been withdrawn from the Palmerton School District[17], meaning there is now no way for the Carbon County Office of Children and Youth Services to follow-up with speaking to the children regarding the interior of the home.

This Court notes that in the *Petition to Compel* case, the Superior Court rejected the argument made by Susquehanna County Services for Children and Youth that there was additional information provided to the Superior Court in a brief that was sufficient for a search warrant, saying that the petition itself must allege those facts. *Petition to Compel, supra*, at 378. Here, any additional information was provided by way of testimony and evidence at the time of the hearing on the matter when this Court was making its determinations on the matter. Thus, this information is distinguishable from the information

---

[16] N.T. 1/30/15 P. 29-34.
[17] In this Court's opinion, the fact that the children were removed from the Palmerton School District at a time when the Carbon County Office of Children and Youth Services wanted to question them about the home suggests "something to hide" relating to the condition of the home.

[FM-18-15]

11

provided in the brief submitted to the Superior Court in the *Petition to Compel* case.

In the alternative, if the probable cause can *only* be found based on the facts averred in the petitions, this Court still finds that there was sufficient information for probable cause to exist. The report to the Carbon County Office of Children and Youth Services was regarding the condition and cleanliness of the home. The petitions detailed the condition of the exterior of the home, which included a boarded up window inside of the home, which was clearly visible from outside. The petitions included information from the caseworker's interviews with the children. The petitions also identified the unwillingness of the natural parents to allow the Carbon County Office of Children and Youth Services into the home. This Court finds that this information, in and of itself, would be sufficient to justify the probable cause necessary for an order permitting the Carbon County Office of Children and Youth Services to enter the home of the W's to conduct their investigation as required by the CPSL.

## II.  Appellant's Claim of a "*Sua Sponte*" Act by this Court

Again, while there does not appear to be case law directly on point relating to this matter, there are similar cases this Court can draw from in this matter.  In *Brooks-Gall v. Gall*, the Superior Court, when dealing with a trial court *sua sponte* removing children from their parents' custody following a Protection from Abuse hearing, stated "we are instructed by our decisions in cases where we have reversed trial court orders in which a court has *sua sponte* adjudicated children dependent or altered custody orders *without providing the necessary hearings or following the required procedures*."  840 A.2d 993, 996 (Pa. Super. Ct. 2003) (emphasis added).

In *Brooks-Gall* and in each of the three (3) cases cited by the Superior Court in support of their decisions, the issue the court found troubling was that the parties "were not presented with notice or an opportunity to present testimony or argue against the children's placement into state custody."  *Id.* at 997.  This resulted, in the Superior Court's opinion, in a violation of the parents' due process rights.  *Id.*

Turning to the matter *sub judice*, this Court finds that it can draw from the Superior Court's opinions in supporting the

[FM-18-15]

13

ruling that is now up for appeal. Just as in *Petition to Compel*, the Carbon County Office of Children and Youth Services received a report of potential abuse or neglect, attempted to conduct a home visit, and were refused. Similarly, petitions were brought before this Court to compel the homeowners to permit Children and Youth into the home.[18]

Further, this Court feels this instant matter can be differentiated from cases like *Brooks-Gall*. In *Brooks-Gall*, for example, the parents went before the trial court for a PFA, and the judge determined the children were being used as pawns in a custody matter. Here, Appellant was presented with notice and

---

[18] As stated above, the ambiguity in the statutory language as to what constitutes an "appropriate court proceeding" is part of the issue this Court had to decide. Although the petitions filed were formally called "Petitions for Dependency", the testimony at the hearing on these petitions show that the intended goal of the Carbon County Office of Children and Youth Services was merely for this Court to order Appellant to cooperate with the agency. At one point, counsel for Children and Youth stated "We are just asking for cooperation from the parents. We are not asking to remove these kids from the home. We wouldn't have even filed the dependency petition if the parents were cooperative in the first place. . . ." (N.T. 1/30/15 P. 63). Counsel later reiterated their intent in filing the petition, saying "[s]o the agency is just looking for cooperation from the parents. I believe in other cases like this, Your Honor has continued the matter, ordered the parents to cooperate, and then we can dismiss the dependency at the end of it. Again, we are just looking for cooperation so we can close this out." *Id.* at 64. When further questioned by this Court as to whether a formal petition for dependency was the proper vehicle for this request, counsel for Children and Youth stated "the way the regulations are set up, I believe this is our avenue or means of relief to complete our investigation. If we are unable to get into the home to complete the investigation, that would mean we would have safety concerns, meaning that we would need to file a dependency

[FM-18-15]

14

opportunity to present testimony, with regards to both dependency and the Carbon County Office of Children and Youth Services' attempts to enter the home. The box checked on the Petitions for Dependency reads in part "a determination that there is a lack of proper parental care may be based upon evidence of conduct by the parent, guardian, or custodian *that places the health, safety, or welfare at risk. . . .*"[19] The reasons for the petitions being filed, as listed above, specifically put Appellant on notice that the Carbon County Office of Children and Youth Services' main concern was with the condition of the home, along with the caseworkers two (2) attempts to visit the home and her phone call where she spoke with the mother and informed the parents of both the Office's need to conduct such an investigation, and their reason for filing these Petitions for Dependency.

This was not, in this Court's opinion, a matter so separate from the dependency that Appellant did not have notice or opportunity to argue against such an order. The Petitions for Dependency, along with the testimony of the caseworker, show

---

petition in order to remedy those concerns. That is my understanding of the way that this works and that is why we filed the petitions." *Id.* at 67.

[19] Petitions for Dependency (P. 3) (emphasis added).

[FM-18-15]

15

that Appellant was clearly aware of what the Carbon County Office of Children and Youth Services was attempting to do when they filed these actions. The Carbon County Office of Children and Youth Services not being able to investigate the conditions of the home, when the alleged conditions of the home may form the basis for a possible Adjudication of Dependency, is contrary to the intent and language of the CPSL. Therefore, in looking at the substance of the Petitions for Dependency, this Court feels that while there may not have been sufficient evidence to adjudicate the children dependent, ordering that the Carbon County Office of Children and Youth Services be permitted to enter the home to complete their investigation, based on sufficient probable cause, is not an erroneous, *sua sponte*, action. The ultimate goal sought by the Carbon County Office of Children and Youth Services was the same as that issued by this Court, the goal of which was properly noticed to Appellant, who had the opportunity to defend it.

[FM-18-15]

16

## CONCLUSION

Based upon the foregoing, this Court respectfully recommends that the March 5, 2015 Orders directing that the Carbon County Office of Children and Youth Services be permitted to enter Appellant's home be affirmed.

BY THE COURT:

Joseph J. Matika, J.

FILED

2015 APR 13 PM 3: 22

CARBON COUNTY
CLERK OF COURTS
WM. C. MCGINLEY