**[J-10A-2020, J-10B-2020, J-10C-2020, J-10D-2020 and J-10E-2020]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**


**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | | |
|---|---|---|
| IN THE INTEREST OF: D.R., A MINOR | : | No. 45 WAP 2019 |
| | : | |
| | : | Appeal from the Order of the |
| APPEAL OF: FAYETTE COUNTY | : | Superior Court entered July 26, |
| CHILDREN AND YOUTH SERVICES | : | 2019 at No. 311 WDA 2019, |
| | : | vacating the Order of the Court of |
| | : | Common Pleas of Greene County |
| | : | entered February 1, 2019 at No. 6 |
| | : | JM 2018. |
| | : | |
| | : | ARGUED:  March 11, 2020 |
| | | |
| IN THE INTEREST OF: A.R., A MINOR | : | No. 46 WAP 2019 |
| | : | |
| | : | Appeal from the Order of the |
| APPEAL OF: FAYETTE COUNTY | : | Superior Court entered July 26, |
| CHILDREN AND YOUTH SERVICES | : | 2019 at No. 312 WDA 2019, |
| | : | vacating the Order of the Court of |
| | : | Common Pleas of Greene County |
| | : | entered February 1, 2019 at No. 7 |
| | : | JM 2018. |
| | : | |
| | : | ARGUED:  March 11, 2020 |
| | | |
| IN THE INTEREST OF: G.R., A MINOR | : | No. 47 WAP 2019 |
| | : | |
| | : | Appeal from the Order of the |
| APPEAL OF: FAYETTE COUNTY | : | Superior Court entered July 26, |
| CHILDREN AND YOUTH SERVICES | : | 2019 at No. 313 WDA 2019, |
| | : | vacating the Order of the Court of |
| | : | Common Pleas of Greene County |
| | : | entered February 1, 2019 at No. 8 |
| | : | JM 2018. |
| | : | |
| | : | ARGUED:  March 11, 2020 |
| | | |
| IN THE INTEREST OF: R.R., A MINOR | : | No. 48 WAP 2019 |
| | : | |
| | : | |
| | : | |

APPEAL OF: FAYETTE COUNTY       : Appeal from the Order of the
CHILDREN AND YOUTH SERVICES  : Superior Court entered July 26,
                                                : 2019 at No. 314 WDA 2019,
                                                : vacating the Order of the Court of
                                                : Common Pleas of Greene County
                                                : entered February 1, 2019 at No. 9
                                                : JM 2018.
                                                :
                                                : ARGUED:  March 11, 2020

IN THE INTEREST OF: C.R., A MINOR  : No. 49 WAP 2019
                                                :
                                                : Appeal from the Order of the
APPEAL OF: FAYETTE COUNTY       : Superior Court entered July 26,
CHILDREN AND YOUTH SERVICES  : 2019 at No. 315 WDA 2019,
                                                : vacating the Order of the Court of
                                                : Common Pleas of Greene County
                                                : entered February 1, 2019 at No. 10
                                                : JM 2018.
                                                :
                                                : ARGUED:  March 11, 2020

## <u>OPINION</u>

**JUSTICE MUNDY**                                  **DECIDED:  JUNE 16, 2020**

The Child Protective Services Law (CPSL)[1] tasks county Children and Youth Agencies with investigating reports of suspected child abuse or neglect.  The CPSL defines "child abuse" for reporting purposes and outlines specific considerations an agency must assess and tasks it must perform to complete its investigation.  Further actions are authorized dependent on the conclusions reached.  In this appeal, we consider what authority, if any, the CPSL affords an agency, during its investigation, to compel an observed urine sample for analysis from a subject of a report of suspected child abuse.

### Factual and Procedural History

---

[1] 23 Pa.C.S. §§ 6301-6386.

The factual and procedural history of this case unfolded as follows. D.R. (Father) and J.R. (Mother) (collectively, Parents) reside in Greene County with their five children, ranging in age from six to sixteen years old. Father is an attorney who, as part of his private practice, has represented parents under investigation by Greene County Children and Youth Services (CYS).

On October 29, 2018, Greene County CYS received a report that on October 12, 2018, Father was observed to be impaired or under the influence while in the presence of one of his children (not otherwise identified) at the Fort Jackson Building.[2] Because Father is a practicing attorney in Greene County, and to avoid a conflict of interest, the matter was referred to Fayette County CYS (the Agency). On November 5, 2018, the Agency received an e-mail stating that Father was seen in a store in Washington County and appeared "completely out of it." N.T., 1/28/19, at 20. On November 14, 2018, the Agency received an additional report by telephone, stating that Father "had an injury and [there was] suspicion that he may be taking something he shouldn't." Id. at 43. This third report also included an allegation that Father abused Mother, but that criminal charges were dismissed because she refused to testify.

On December 14, 2018, the Agency filed a Motion to Compel [Parents'] Cooperation with [General Protective Services] Assessment (Motion to Compel). The Motion to Compel set forth the reports outlined above as its basis for initiating an investigation to assess the need for any services. The Motion to Compel included representations that, as part of its investigation, a caseworker met with one of the children, R.R., at the child's school on November 3, 2018, and with three of the other children at their school on November 7, 2018. It further outlined the Agency's attempts to contact

---

[2] Greene County CYS has its offices in the Fort Jackson Building, which "is a Court and County related office building adjacent to the Courthouse." Trial Court Op., 3/5/19, at 2-3.

Father, only one of which was successful. The Motion to Compel was not served on Parents until January 15, 2019. A hearing was held on January 18, 2019, before Senior Judge Gerald R. Solomon, who was appointed due to the *sua sponte* recusal of the two judges who serve on the Greene County Court of Common Pleas. At the hearing, Judge Solomon denied Parents' motion for recusal but granted their request for a continuance.

Judge Solomon held a hearing on January 28, 2019, at which the Agency offered the testimony of Rebecca Pegg, supervisor of the intake department for the Agency. She testified about the contents of three reports received by the Agency from one or more anonymous reporters, which formed the basis for initiating the instant investigation.[3] She related the full substance of the first report received from a phone call to Childline in Greene County, as referred to Fayette County on October 29, 2018, about an incident alleged to have occurred on October 12, 2018, as follows: "[Father] was observed in the Fort Jackson Building with his child, appeared to be impaired or under the influence[/]of an unknown substance. . . . Reporting source was concerned because of Father's observable behaviors." N.T., 1/28/19, at 38. No additional information was provided from the report or any follow-up with the reporter. Supervisor Pegg testified that the Agency directly received a second report by e-mail on November 5, 2018. She testified that the report expressed "concerns that Father was seen in a store in Washington County 'completely out of it.'" *Id.* at 20. The third report testified to by Supervisor Pegg stemmed from a phone call received by the Agency on November 14, 2018. "It is alleged that Father had an assault charge [in Washington County] for allegedly beating up Mom.

---

[3] In the testimony and throughout this case, the parties and lower courts refer to "anonymous" reporters. What is meant, however, is that the identity of the reporter is confidential to protect his, her, or their anonymity.

However [the] charges [were] dropped, after refusal of testimony.[4] . . . Concerns for Father having a very serious problem. Many have shared concerns. Often seen with a child. Concerns for the children . . . . Concerns that [Father] may be taking something he shouldn't."[5] *Id.* at 22.

Following the hearing, Judge Solomon issued orders directing Parents to permit the Agency into their home to assess the living conditions of the children, and directing Parents to cooperate with the Agency. The court also ordered Father to submit observed urine samples for purposes of drug and alcohol assessments. The orders further noted that Parents' failure to comply would subject them to sanctions.

Parents appealed. In a published opinion, a panel of the Superior Court reversed.[6] With respect to the substance of the appeal, the panel noted that in *In re Petition to*

---

[4] Supervisor Pegg testified that in the course of the subsequent investigation, the Agency reviewed the records in Washington County under Parents' names and found no such charge.

[5] Regarding the concern Father "may be taking something he shouldn't," the Agency's Motion to Compel specifically averred the report alleged "that Father was recently injured and may be taking medication he shouldn't be taking." Motion to Compel Cooperation with GPS Assessment, 12/14/18, ¶ 6.

[6] Judge Kunselman authored the opinion joined by Judge Musmanno. Judge Ott concurred in the result. *See In the Interest of D.R. [et al.]; Appeal of D.R. and J.R.*, 216 A.3d 286 (Pa. Super. 2019). On initial procedural matters, the panel rejected Parents' claim that Judge Solomon should have recused himself from the proceedings. It also noted its agreement with Parents that the Agency erred by filing an unverified motion instead of a petition as required by the Administrative Code, which provides, in relevant part:

> The county agency shall petition the court if one of the following applies:
>
> . . .
>
> (2) A subject of the report of suspected child abuse refuses to cooperate with the county agency in an investigation, and the county agency is unable to determine whether the child is at risk.

*Compel Cooperation with Child Abuse Investigation*, 875 A.2d 365 (Pa. Super. 2005), the court held that a CYS inspection of a home is subject to the limitations of state and federal search and seizure jurisprudence. In that case, the agency received a referral of possible abuse and medical neglect. After contacting the parents and medical providers, the agency sought a home inspection, which the parents refused. The agency obtained an *ex parte* order compelling the inspection. However, the Superior Court reversed, noting:

> Instantly, the only relevant facts alleged were that [CYS] had received a ChildLine referral for possible medical neglect. Clearly, this was insufficient to support the court's order compelling appellants to submit to a search of their home. Nor did [CYS] allege exigent circumstances; the court's order giving appellants ten days to comply indicates that this was not an emergency situation where the child's life was in imminent danger.

*Id.* at 378. The court further noted there was no link between the alleged abuse and the conditions in the home. *Id.*

Turning to the instant matter, the panel noted that while there were three separate reports of Father's intoxication, there was no specificity as to the type of impairment or if such impairment caused the children to be abused or neglected. *Appeal of D.R. and J.R.*, 216 A.3d at 295. Additionally, the panel observed that nothing in the Agency's investigation prior to its filing of the Motion to Compel, including its interviews with the children, led to further suspicion of abuse or neglect. The Agency did not allege a link between any alleged abuse/neglect and the condition or circumstances in Parents' home. Furthermore, the Agency did not allege exigent circumstances. *Id.* Because the record did not provide a sufficient foundation for a finding of child abuse or neglect under the

---

55 Pa. Code § 3490.73(2). However, the Superior Court found that the trial court did not abuse "its discretion by entertaining the unverified motion, because the court took sworn testimony prior to granting the request of [the Agency]." *Appeal of D.R. and J.R.*, 216 A.3d at 293.

CPSL, the Superior Court concluded the trial court erred by ordering Parents to submit to a home inspection.

The panel next considered the challenge to the order directing Father to submit a urine sample, which counsel for the Agency stated would be an "observable urine sample." N.T., 1/28/19, at 48. This procedure "necessitates that the administrator of the drug test watch the urine exit the penis to ensure the integrity of the sample." *Appeal of D.R. and J.R.*, 216 A.3d at 289 n.3. In support of its position, the Agency had relied on Pa.R.C.P. 1915.8 ("Physical and Mental Examination of Persons"), as authority for ordering drug testing of a parent. It noted Rule 1915.8(a) provides that in a custody matter a court may order any party to participate in an evaluation by an expert, and that the 2007 Comment to the rule states that it applies to drug and alcohol evaluations. The Agency cited *Luminella v. Marcocci*, 814 A.2d 711 (Pa. Super. 2002), where the Superior Court held that court-ordered drug testing in the context of a custody matter was permissible so long as the search survived constitutional scrutiny.

The panel concluded, "there is no statutory authority for a CYS agency to petition for a drug test prior to a dependency adjudication. Unlike a home inspection, a drug screen is not mentioned, much less mandated, anywhere in either the CPSL or [the regulations implementing the CPSL]." *Appeal of D.R. and J.R.*, 216 A.3d at 295. Additionally, the panel rejected reliance on *Luminella* because in the instant matter "there is no legislative underpinning that authorizes the court to order the drug testing of a parent" in the context of a CYS investigation conducted prior to a dependency adjudication. *Id.* at 296. In light of the lack of statutory authorization, the panel "declin[ed] to derive from another area of the law the government's authority to drug test parents, prior to a dependency adjudication." *Id.* While expressing respect for the Agency's

mission, the Superior Court noted that the trial court should have denied the request to compel further cooperation from Parents.

The Parties filed cross petitions to this Court for allowance of appeal. We granted the Agency's petition to review limited to the following question.

> Whether the Superior Court erred on an issue of first impression and substantial public importance by vacating and remanding the trial court's order requiring parents to provide a urine sample for drug testing in an investigation relating to allegations of drug usage by one of the parents.

*In the Interest of D.R. [et al.], Petition of: D.R. and J.R.*, 218 A.3d 854 (Pa. 2019) (per curiam).[7]

**Arguments**

The Agency argues the Superior Court erred in holding that it was without authorization to require urine samples as part of its duty to investigate reports of suspected child abuse. The Agency argues such authority is derived from 55 Pa. Code § 3490.232, which requires an Agency to, *inter alia*, perform at least one home visit, and to interview the subject child. If parents or custodians of the child are uncooperative, Section 3490.73 of the Code authorizes the agency to petition the court to order compliance, as to enable the Agency to timely complete its mandatory investigation. The Agency responds to the Superior Court's holding that this authority does not encompass obtaining observed urine samples for analysis by referring to that court's decision in

---

[7] The Agency does not appeal, and our grant of allocatur does not implicate, the Superior Court's reversal of the trial court's order compelling Parents to cooperate with a home visit by the Agency. Additionally, we denied Parents' petition for allowance of appeal on issues involving alleged procedural irregularity of the Agency's Motion to Compel, including the adequacy of the reports to justify the initiation of the Agency's investigation, and the constitutionality of ordering an observable urine test. *See* Parents' Petition for Allowance of Appeal, 315-319 WAL 2019; *Petition of: D.R. and J.R.*, 218 A.3d at 854.

*Luminella*.  In *Luminella*, the court determined that Pa.R.C.P. 1915[8] provided a custody court authority to order a party to submit to drug testing.  The court evaluated the Fourth Amendment implications of such a requirement.  The court found that the United States Supreme Court in *Vernonia School District 47J v. Acton*, 515 U.S. 646 (1995), recognized a balancing test between an individual's expectation of privacy and the governmental purpose behind the testing.  That test provided for consideration of 1) the privacy interest at stake; 2) the nature of the complained of intrusion; and 3) the nature of the governmental interest and the efficacy of the intrusion in achieving those interests.  The

---

[8] The rule provides in pertinent part as follows.

### Rule 1915.8. Physical and Mental Examination of Persons

(a) The court may order the child(ren) and/or any party to submit to and fully participate in an evaluation by an appropriate expert or experts. The order, which shall be substantially in the form set forth in Rule 1915.18, may be made upon the court's own motion, upon the motion of a party with reasonable notice to the person to be examined, or by agreement of the parties. The order shall specify the place, manner, conditions and scope of the examination and the person or persons by whom it shall be made and to whom distributed . . . .

(c) If a party refuses to obey an order of court made under subdivision (a) of this rule, the court may make an order refusing to allow the disobedient party to support or oppose designated claims or defenses, prohibiting the party from introducing in evidence designated documents, things or testimony, prohibiting the party from introducing evidence of physical or mental condition, or making such other order as is just.  The willful failure or refusal of a party to comply with an order entered pursuant to this rule may also give rise to a finding of contempt and the imposition of such sanctions as may be deemed appropriate by the court, including, but not limited to, an adverse inference against the non-complying party.

Pa.R.C.P 1915.8.

*Luminella* Court found that a parent did not have a high expectation of privacy in disputes over a child's welfare, that drug testing amounted to a negligible imposition on that expectation, and that the welfare of children was a compelling state interest. *Luminella*, 814 A.2d at 724.

The Agency argues the same analysis justifies compelling Father to submit to an observed urine sample in this case. The CPSL's stated purpose is to facilitate reporting, investigation, and mitigation of child abuse and neglect. The Agency notes that *Luminella* involved an *ex parte* order from the custody court, whereas in this case, the order followed an evidentiary hearing at which the Parents had an opportunity to be heard.

The Agency also addresses the Superior Court's finding that the Agency did not establish probable cause that any abuse had occurred with respect to any of the children.[9] The Agency argues that it deemed the reports received to be credible, and that the trial court accepted this finding. Because a parent being repeatedly under the influence of drugs or alcohol implicates issues of proper supervision of the children, it was the duty of the Agency to fully investigate so as to assess whether there is a need for services to assure the safety of the children.

Parents argue that the Superior Court correctly determined that the Agency lacked statutory authorization to compel Father to provide an observed urine sample. Preliminarily, Parents note that the Agency's duty to investigate is triggered when it receives a report of suspected child abuse. Parents maintain that even assuming the factual assertions in the three reports received by the Agency are true, nothing therein

---

[9] This finding was the basis for the panel's rejection of the trial court's order compelling Parents to cooperate with a home visit. As noted, the issue of Father submitting to a urine sample was decided on lack of statutory authorization. However, in the event such authorization exists as argued by the Agency, the issue would present another hurdle for the Agency to prevail.

constitutes abuse as defined by the CPSL. Accordingly, the authority to investigate was never triggered.

Further, Parents argue that the Agency's power of investigation as described by the CPSL and attendant regulations contain no authority to require subjects to submit to drug testing. Parents maintain that recognizing such authority in the absence of statutory language is contrary to the Statutory Construction Act. Parents note that the Agency improperly relies on the Rules of Civil Procedure for custody and visitation cases, as those rules are inapplicable to CPSL investigations or juvenile court proceedings. Rather, CPSL investigations and juvenile court proceedings are subject to separate Rules.[10] Parents argue the Agency's reliance on *Luminella* is similarly inapposite.

Parents next present the argument that the order compelling Father to provide an observed urine sample implicates his rights against unreasonable search and seizure protected by the United States and Pennsylvania Constitutions.[11] The Courts have been

---

[10] *Compare* Pa.R.C.P. 1915.1-1915.25 *with* Pa.R.J.C.P. 1100-1800.

[11] The Fourth Amendment to the United States Constitution provides:

> The right of the People to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The Pennsylvania Constitution provides:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Article I, Section 8 of the Pennsylvania Constitution

clear that the taking of bodily fluids is a search. Thus, even if authorized, any search must be predicated by a showing of probable cause. At the hearing in this matter, the Agency presented testimony from Agency Supervisor Becca Pegg, who had not spoken to the reporting sources or personally engaged in the investigation to that point, including speaking to the children. Rather, Supervisor Pegg testified about the reports from the confidential sources and the findings of the investigating caseworkers. Through this double hearsay, Parents argue the trial court had no basis to assess the credibility of the reports.

Parents also dispute the Agency's argument, in applying the balancing analysis, that the privacy interests at stake (observable urine sample) are minimal.

> There are few activities in our society more personal or private than the passing of urine. Most people describe it by euphemisms, if they talk about it at all. It is a function traditionally performed without public observation; indeed, its performance in public is generally prohibited by law, as well as social custom.

Parents' Brief at 18 (*quoting Skinner v. Ry. Labor Execs. Ass'n*, 489 U.S. 602, 617 (1989)). Parents also argue the ordered testing in this case would not meet the efficacy aspect of the balancing test the Agency purports to champion. Parents reiterate that the reports contain no allegations of child abuse, let alone any linkage of potential child abuse or neglect to the alleged odd behavior potentially related to Father being under the influence of an unknown substance. Furthermore, the testing would be far removed from the time of the "incidents" so as to provide no probative value. "Essentially, if no abuse or neglect has been alleged, as admitted by [the Agency], the presence of a drug in someone's system evidences only that there was 'potentially' a drug used by the investigated, at some point in time in the past, assuming the drug test is accurate." *Id.* at 21-22. Lastly, Parents argue that affording the Agency the ability to seek sanctions for refusal to submit to unwarranted taking of an observable urine sample (which the Agency

indicated was routine practice in its investigations), absent any finding of abuse or neglect, introduces possible punitive consequences of civil contempt.[12]

## Discussion

### A

The question we review requires statutory interpretation of the CPSL, for which our standard of review is *de novo*. *In the Interest of L.J.B.*, 199 A.3d 868, 873 (Pa. 2018).

> A court's role when interpreting a statute is to determine the intent of the General Assembly so as to give it its intended effect. 1 Pa.C.S. § 1921(a). "In discerning that intent, the court first resorts to the language of the statute itself. If the language of the statute clearly and unambiguously sets forth the legislative intent, it is the duty of the court to apply that

---

[12] Two Sets of AMICI filed briefs in support of Parents.

The National Advocates for Pregnant Women, and the Community Legal Services of Philadelphia, concerned with "the civil and human rights of parents and families," echo the arguments made in Parents' brief. Amici Brief (N.A.P.W. & C.L.S.P.) at 5. As do Parents, Amici argue that neither the CPSL nor the Code contain any authorization for compelled submission of urine samples as part of a pre-adjudication investigation. Amici note that the CPSL has been expanded in the wake of recent scandals, but the legislature did not expand the Agency's investigative authority to such an extent. Amici review the constitutional implications if such authority were deemed to exist, noting there is scant linkage between use of controlled substances and likelihood of committing harm to a child. Amici also cite studies questioning the reliability of clinical drug testing. Amici review the limitations the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution would place on such authorization, if it existed. Amici argue that there are no special needs that permit such an intrusion into the privacy rights of parents absent probable cause. Amici submit that the Agency presented no probable cause in this case. The Agency's insistence that the courts defer to its subjective assessment of the "credibility" of the reporting sources divorces such finding from the role of the trial court as an objective finder of fact. Amici note further that the reports allege no basis for suspecting child abuse, even if deemed credible. Finally, Amici contend the expansion of investigative authority by the Agency would disparately impact the poor and people of color.

The American Civil Liberties Union of Pennsylvania, and the Home School Legal Defense Association develop similar arguments that, even if the Agency had statutory Authority to compel a subject of an investigation to submit bodily fluids for analysis, constitutional limitations preclude such in this case. Amici propound on the strong privacy interests at stake and the dearth of probable cause supporting a suspicion of child abuse.

> intent to the case at hand and not look beyond the statutory language to ascertain its meaning." *In re L.B.M.*, 639 Pa. 428, 161 A.3d 172, 179 (2017); *see also* 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.").

*Id.*

To provide context for our discussion, we set forth the statutory provisions at issue in this case. The Legislature in enacting the CPSL declared its purpose is to:

> encourage more complete reporting of suspected child abuse; to the extent permitted by this chapter, to involve law enforcement agencies in responding to child abuse; and to establish in each county protective services for the purpose of investigating the reports swiftly and competently, . . . [and] to . . . establish a program of protective services with procedures to assess risk of harm to a child and with the capabilities to respond adequately to meet the needs of the family and child who may be at risk and to prioritize the response and services to children most at risk.

23 Pa.C.S. § 6302. Additionally, the CPSL directs that the Department of Public Welfare (Department) "shall adopt regulations necessary to implement this chapter." *Id.* § 6348. The CPSL provides that each county agency shall at all times be available to receive oral or written "reports of suspected child abuse." *Id.* § 6366. The CPSL also provides an extensive and detailed definition of "child abuse," which is:

> **(b.1) Child abuse.--**The term "child abuse" shall mean intentionally, knowingly or recklessly doing any of the following:
>
> > (1) Causing bodily injury to a child through any recent act or failure to act.
> >
> > (2) Fabricating, feigning or intentionally exaggerating or inducing a medical symptom or disease which results in a potentially harmful medical evaluation or treatment to the child through any recent act.

(3) Causing or substantially contributing to serious mental injury to a child through any act or failure to act or a series of such acts or failures to act.

(4) Causing sexual abuse or exploitation of a child through any act or failure to act.

(5) Creating a reasonable likelihood of bodily injury to a child through any recent act or failure to act.

(6) Creating a likelihood of sexual abuse or exploitation of a child through any recent act or failure to act.

(7) Causing serious physical neglect of a child.

(8) Engaging in any of the following recent acts:

> (i) Kicking, biting, throwing, burning, stabbing or cutting a child in a manner that endangers the child.
>
> (ii) Unreasonably restraining or confining a child, based on consideration of the method, location or the duration of the restraint or confinement.
>
> (iii) Forcefully shaking a child under one year of age.
>
> (iv) Forcefully slapping or otherwise striking a child under one year of age.
>
> (v) Interfering with the breathing of a child.
>
> (vi) Causing a child to be present at a location while a violation of 18 Pa.C.S. § 7508.2 (relating to operation of methamphetamine laboratory) is occurring, provided that the violation is being investigated by law enforcement.
>
> (vii) Leaving a child unsupervised with an individual, other than the child's parent, who the actor knows or reasonably should have known:
>
>> (A) Is required to register as a Tier II or Tier III sexual offender under 42 Pa.C.S. Ch. 97 Subch. H (relating to registration

of sexual offenders), where the victim of the sexual offense was under 18 years of age when the crime was committed.

(B) Has been determined to be a sexually violent predator under 42 Pa.C.S. § 9799.24 (relating to assessments) or any of its predecessors.

(C) Has been determined to be a sexually violent delinquent child as defined in 42 Pa.C.S. § 9799.12 (relating to definitions).

(D) Has been determined to be a sexually violent predator under 42 Pa.C.S. § 9799.58 (relating to assessments) or has to register for life under 42 Pa.C.S. § 9799.55(b) (relating to registration).

(9) Causing the death of the child through any act or failure to act.

(10) Engaging a child in a severe form of trafficking in persons or sex trafficking, as those terms are defined under section 103 of the Trafficking Victims Protection Act of 2000 (114 Stat. 1466, 22 U.S.C. § 7102).

23 Pa.C.S. § 6303(b.1).  The Department's implementing regulations provide the following definition of "child abuse":

4) *Child abuse*--

(i) The term child abuse means any of the following:

(A) Any recent act or failure to act by a perpetrator which causes nonaccidental serious physical injury to a child.

(B) An act or failure to act by a perpetrator which causes nonaccidental serious mental injury to or sexual abuse or exploitation of a child.

(C) A recent act, failure to act or series of the acts or failures to act by a perpetrator which creates an imminent risk of serious physical

injury to or sexual abuse or exploitation of a child.

(D) Serious physical neglect by a perpetrator constituting prolonged or repeated lack of supervision or the failure to provide the essentials of life, including adequate medical care, which endangers a child's life or development or impairs the child's functioning.

. . .

55 Pa. Code § 3490.4.

Upon receipt of a report, a county agency is required to immediately initiate an investigation. 23 Pa.C.S. § 6368. The parameters of the investigation are set forth by the CPSL, as follows:

(c) Investigation.--An investigation under this section shall include the following:

(1) A determination of the safety of or risk of harm to the child or any other child if each child continues to remain in the existing home environment.

(2) A determination of the nature, extent and cause of any condition listed in the report.

(3) Any action necessary to provide for the safety of the child or any other child in the child's household.

(4) The taking of photographic identification of the child or any other child in the child's household, which shall be maintained in the case file.

(5) Communication with the department's service under section 6332 (relating to establishment of Statewide toll-free telephone number).

(d) Investigative actions.--During the investigation, all of the following shall apply:

(1) The county agency shall provide or arrange for services necessary to protect the child while the agency is making a determination under this section.

(2) If the investigation indicates bodily injury, the county agency may require that a medical examination by a certified medical practitioner be performed on the child.

(3) Where there is reasonable cause to suspect that there is a history of prior or current abuse, the medical practitioner has the authority to arrange for further medical tests or the county agency has the authority to request further medical tests.

(4) The investigation shall include interviews with all subjects of the report, including the alleged perpetrator. If a subject of the report is not able to be interviewed or cannot be located, the county agency shall document its reasonable efforts to interview the subject and the reasons for its inability to interview the subject. . . .

*Id.* § 6368(c) and (d). In addition, the Department-promulgated regulations provide, as follows:

**§ 3490.232. Receiving reports and assessing the need for services.**

(a) The county agency shall be the sole civil agency responsible for receiving and assessing all reports alleging a need for general protective services. . . .

(b) The county agency shall provide 24-hours-per-day/7-day-per-week telephone access to receive reports alleging a need for general protective services.

(c) The county agency shall see the child immediately if emergency protective custody has been taken, is needed, or if it cannot be determined from the report whether or not emergency protective custody is needed. Otherwise, the county agency shall prioritize the response time for an assessment to assure that children who are most at risk receive an assessment first.

(d) The county agency shall use a State-approved risk assessment process for general protective services as required by § 3490.321 (relating to standards for risk assessment) to:

(1) Aid in its assessment of whether to accept the family for services.

(2) Insure that its assessment is comprehensive.

(3) Help determine the need for general protective services.

(4) Assist in the development of the family service plan.

(e) The county agency shall complete an assessment within 60-calendar days to determine whether or not the child and family should be accepted for general protective services, be referred to another agency for services or close the case.

(f) The county agency shall see the child and visit the child's home during the assessment period. The home visits shall occur as often as necessary to complete the assessment and insure the safety of the child. There shall be at least one home visit.

(g) The county agency shall interview the child, if age appropriate, and the parents or the primary person who is responsible for the care of the child. The county agency shall also conduct interviews with those persons who are known to have or may reasonably be expected to have information that would be helpful to the county agency in determining whether or not the child is in need of general protective services.

(h) The county agency may make unannounced home visits.

(i) The county agency shall provide or arrange appropriate services to assure the safety of the child during the assessment period.

(j) The county agency shall initiate the appropriate court proceedings and assist the court during all stages of the court proceedings if the county agency determines that general protective services are in the best interest of a child and if an offer of an assessment, a home visit or services is refused by the parent.

55 Pa. Code § 3490.232.

**B**

Parents' challenge to the Agency's authority questions whether the CPSL or Code permit compelling a parent to submit to an observed urine sample for analysis as part of its investigation.[13]  As noted, the Superior Court concluded no such legislative or regulatory authority existed, and reversed the trial court's order compelling Father to cooperate in providing an observed urine sample on this basis.   The Agency argues that its authority to compel a parent to provide an observed urine sample for analysis is subsumed in the legislative authorization to investigate.

The CPSL outlines the actions the Agency should take to perform any investigation.  *See* 23 Pa.C.S. § 6368 (c) and (d).  Some actions are predicated on an indication of bodily injury or a history of prior physical abuse, neither of which are implicated in the instant case.  The CPSL directs an Agency to interview all subjects of the report and to perform a home inspection.  In no event does the CPSL expressly or implicitly authorize collecting samples of bodily fluids, without consent, for testing.  We note that the Code enumerates several risk factors an Agency should assess as part of its State-approved risk assessment process, including "[t]he characteristics of the parent . . . including a **history** of drug and alcohol abuse."  55 Pa. Code § 3490.321(e)(2) (emphasis added).  This does not translate into an authorization to compel current drug and alcohol testing during an investigation.

The Agency argues it is appropriate for the trial court to issue an order to compel cooperation with providing a urine sample for analysis, and that such judicial authority was recognized by the Superior Court in *Luminella.*  As explained by the Superior Court,

---

[13] We note that Parents devote a significant portion of their brief contending that the accounts in three reports received by the agency, accepted as true, failed to meet the definition of "child abuse" contained in the CPSL and Code.  Because this question is beyond the scope of the issue accepted for review, we do not address it.  Accordingly, this decision should not be construed to endorse any dicta contained in the Superior Court's opinion that the allegations in the reports properly triggered the Agency's statutory obligation to investigate.  *Appeal of D.R. and J.R.*, 216 A.3d at 296.

*Luminella* concerned the application of Pa.R.C.P. 1915, which applies to child custody litigation. There is nothing in the language of the Rule that suggests it is applicable to juvenile court proceedings under the CPSL. The nature of a custody case, where the parties initiate the action before the domestic relations division of the court to determine the best interest of the child, differs fundamentally from the instant Motion to Compel before the juvenile division where an arm of the State seeks to intrude into a family's private sphere based on a third party report. The Agency argues that *Luminella's* application of the tripartite test described in *Vernonia School District 47J* is relevant here to show the balance between the State interest and the Parents' privacy interests justifies the trial court's order to compel. The Agency's argument, however, is less a demonstration of legislative authorization than an illumination of the potential constitutional considerations such an authorization would face had it been granted. The Superior Court was correct to "decline to derive from another area of law" the authority to compel drug testing as part of its investigatory function under the CPSL. *Appeal of D.R. and J.R.*, 216 A.3d at 296.

That such authority is lacking from the CPSL is apparent. The Agency's implication, that precluding this avenue of investigation handicaps its ability to provide the mandated assessment, is over-stated. The Agency has not explained how any results obtained from the proposed testing would further its determination of whether or not child abuse occurred or to identify a perpetrator.[14]

### Conclusion

Based on the unambiguous provisions of the CPSL, we conclude that the Agency's authority to investigate does not include the authority to obtain an involuntary urine

---

[14] Because of our disposition on statutory grounds, we do not reach the constitutional implications of the Agency's position. This "adhere[s] to the sound tenet of jurisprudence that courts should avoid constitutional issues when the issue at hand may be decided upon other grounds." *In re Fiori*, 673 A.2d 905, 909 (Pa. 1996) (citations omitted).

sample from the subject of the investigation.  Accordingly, we affirm the judgment of the Superior Court.

Chief Justice Saylor and Justices Baer, Todd, Donohue, Dougherty and Wecht join the opinion.